**MILITARY CIRCLE PET CENTER NO. 94, INC., d/b/a Docktor Pet Center, Plaintiff,**

v.

**COBB COUNTY, GEORGIA; Glenda Knapp, individually and as Director of Cobb County Animal Control; Patrick H. Head, individually and as Solicitor of Cobb County; and Paul O. Williams, Jr., D.V.M., Defendants.**

Civ. A. C85–4736A.

United States District Court,
N.D. Georgia,
Atlanta Division.

May 20, 1987.

Philip S. Coe, Webb & Daniel, Atlanta, Ga., for plaintiff.

Jerry L. Gentry and David P. Hartin, Sams, Glover & Gentry, Marietta, Ga., for defendants.

ORDER

ROBERT H. HALL, District Judge.

Plaintiff brings this action seeking monetary damages for the alleged deprivation of

plaintiff's property and liberty in violation of the Fourteenth Amendment to the United States Constitution and as a result of alleged tortious conversion and defamation by defendants. Federal jurisdiction is predicated upon 42 U.S.C. § 1983 and diversity of citizenship, 28 U.S.C. § 1332. The action is currently before the court on defendants' motion for summary judgment. For the reasons stated herein, the court PARTIALLY GRANTS and PARTIALLY DENIES defendants' motion.

FACTS

Plaintiff ("Docktor Pet") is a Virginia corporation which owns and operates the Docktor Pet Store at Cumberland Mall in Cobb County, Georgia. Defendant Glenda Knapp ("Knapp") is the Director of the Cobb County Animal Control Department and Defendant Patrick H. Head ("Head") is the duly elected Solicitor of the State Court of Cobb County, Georgia. Defendants' Statement of Undisputed Material Facts, ¶¶ 1, 3, 4. ("Defendants' Facts"). Defendant Paul O. Williams, Jr. ("Williams") is a licensed veterinarian who is not now nor ever has been, an employee of Cobb County, Georgia. *Id.,* ¶ 5.

On or about September 12, 1985 the Cobb County Police and Animal Control officers, along with a licensed veterinarian, participated in the execution of a search warrant at the Cumberland Mall Docktor Pet Store. *Id.,* ¶ 6. The search warrant authorized the confiscation of "cruelly treated animals who are sick and are not being treated medically, animals in overcrowded and diseased environment, business records which document condition of animals; [and] euthanizing drugs," which allegedly constituted evidence of the crimes of cruelty to animals, Ga. Off'l Code Ann. § 16–12–4, and violation of the dangerous drug statute, Ga. Off'l Code Ann. § 16–13–71. *See*

Affidavit of Patrick H. Head, Exhibit "A" ("Head Affidavit").

The authorities who executed the search warrant seized several items including a number of animals, business records of the Docktor Pet Store and drugs.[1] Defendants Knapp, Head and Williams did not participate nor were they present when the property was seized from the Docktor Pet Store. Following the seizure, the authorities took the animals to the Cobb County Animal Control Center. Defendants' Facts, ¶¶ 6, 7. Defendant Knapp arranged with Defendant Williams to examine, evaluate and treat the seized animals. *Id.,* ¶ 8. Some of the seized animals died despite the treatment given them by Defendant Williams. *Id.,* ¶ 10.

Defendant Williams, at all times during his treatment of the seized animals, acted as an independent contractor for the County. Affidavit of Paul O. Williams, Jr., ¶ 10 ("Williams Affidavit"). Cobb County employees instructed Williams to examine evaluate and treat the seized animals and notify the Cobb County Solicitor's Office when all the animals were healthy. *Id.,* ¶ 11. Cobb County employees also asked Williams to make public statements and publicly respond to inquiries concerning the animals during the period he cared for the animals. *Id.,* ¶ 13.

Defendant Head reviewed the evidence seized and prepared criminal accusations against the plaintiff and five of its employees. The accusations charged the plaintiff and its employees with multiple counts of Cruelty to Animals and Deceptive Trade Practices and were filed by Defendant Head on or about October 9, 1985. Defendants' Facts, ¶ 9. Soon after its property was seized, Docktor Pet made several demands on Defendants Head and Knapp for the return of its animals. Defendants refused to return the animals until all were

---

**1.** The Georgia Court of Appeals subsequently found the search and seizure to be an unlawful violation of the Fourth Amendment because the warrant did not authorize the confiscation of certain property which was actually taken and thus the persons executing the warrant exceeded the scope of the warrant. In particular, the Court of Appeals found that in executing the warrant the authorities seized "drugs other than

euthanizing drugs, business records which did not document the condition of animals, and any animal which was not in perfect health." *Military Circle Pet Center No. 94, Inc., d/b/a Docktor Pet Center, et al., v. The State,* 181 Ga.App. 657, 661, 353 S.E.2d 555 (1987). The State has filed a notice of intent to seek review of the order of the Court of Appeals to the Georgia Supreme Court.

well, the Docktor Pet Store at Cumberland Mall was cleaned and plaintiff paid an impoundment fee to the Animal Control Department. *Id.,* ¶ 11.

On October 21, 1985 and by letter dated October 23, 1985 Defendant Head notified Docktor Pet, through its attorney, that the Animal Control Department would return the surviving animals upon payment of an impoundment fee of $2685.00. Docktor Pet contended and continues to contend that defendants never intended to return the confiscated animals, that the claim they were being kept until well was merely a pretext and without legal authority and that the impoundment fee was not mandated or legally permissible under the facts of this case. Docktor Pet therefore refused to pay the impoundment fee. See Plaintiff's Response to Defendants' Statement of Undisputed Material Facts, ¶¶ 11–14 ("Plaintiff's Facts"). Because Docktor Pet did not redeem the animals by paying the impoundment fees within five days of Defendant Head's notification, the Animal Control Department put the animals up for adoption. Defendants' Facts, ¶ 14. At various times, Defendants Knapp and Williams and individuals from the Cobb County Solicitor's Office commented on the facts surrounding the seizure and retention of the animals and/or the criminal accusations against Docktor Pet. *See* Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment, Exhibits 2–4.

Plaintiff contends that it was injured in its business as a result of allegedly defamatory remarks made by Defendants Knapp, Williams and Head, that defendants tortiously converted plaintiff's property to their own use, that plaintiff was deprived of its property and liberty without due process and that defendants disposed of plaintiff's property without just compensation. In Count III of plaintiff's complaint, plaintiff seeks monetary damages pursuant to 42 U.S.C. § 1983. In Counts I and II of plaintiff's complaint, it seeks damages under the Georgia tort laws of conversion and defamation, respectively. Further facts will be disclosed as necessary for discussion of the motion.

## DISCUSSION

### I. *Plaintiff's Section 1983 Claim*

In their motion for summary judgment, defendants argue that none of the defendants can be held liable under § 1983 for a variety of reasons. The court will consider each argument separately.

### A. *Defendant Head's Liability*

Defendants contend that, as Solicitor of the State Court of Cobb County, Defendant Head is entitled to absolute immunity from suit. In *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the Supreme Court held that in "initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." *Id.,* at 431, 96 S.Ct. at 995. The Court noted that in determining whether a prosecutor is entitled to absolute immunity the focus is upon the functional nature of the activities rather than the prosecutor's status. Where a prosecutor's activities are "intimately associated with the judicial phase of the criminal process, ... the reasons for absolute immunity apply with full force." *Id.,* at 430, 96 S.Ct. at 995 (citations omitted). The Court, however, declined to consider whether "similar reasons require immunity for those aspects of the prosecutor's responsibility that cast him the role of an administrator or investigative officer rather than that of advocate." *Id.* (citations omitted).

Citing a subsequent Supreme Court decision, the Eleventh Circuit in *Fullman v. Graddick,* 739 F.2d 553 (11th Cir.1984), stated that where the prosecutor engages in activities which cast him in the role of administrator or investigative officer, "a qualified good-faith immunity applies rather than the absolute immunity associated with the judicial process." *Id.,* at 558 (citing, *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) and *Marrero v. City of Hialeah,* 625 F.2d 499, 506 (5th Cir.1980)). In *Marrero v. City of Hialeah,* cited by the *Fullman* court, the former Fifth Circuit found that a prosecutor's alleged participation in an allegedly illegal search and seizure and alleged slan-

dering of appellants were activities which did not fall within the sphere of activity for which prosecutors were given absolute immunity in *Imbler*. *Marrero, supra,* 625 F.2d at 505.

The *Marrero* court noted that the prosecutor's participation in the alleged illegal search and seizure "occurred not only outside the courtroom but prior to the initiation of any judicial proceedings against appellants" and, as such, the activity was more investigative than quasi-judicial. *Id.* The *Marrero* court further found that the prosecutor's allegedly defamatory statements "occurred outside the confines of the courtroom and were unrelated to any judicial proceeding" and "were essentially those of an investigating officer informing the press of activities occurring at the scene of a crime." *Id.*, at 506. Because the prosecutor's conduct was more investigative than quasi-judicial, the *Marrero* court held the prosecutor was not absolutely immune from suit.

■ In the instant action, plaintiff alleges that Defendant Head and the Solicitor's Office deprived plaintiff of its property and liberty without due process when they performed various investigative or administrative functions. Those activities include: deciding to deny Docktor Pet access to its property (See Knapp Depo. Vol. I, pp. 133–135); issuing or directing the issuance through guidelines of allegedly defamatory statements about Docktor Pet (See Knapp Depo., Vol. II, pp. 61–63; Plaintiff's Response Brief, Exhibits 2–4); participating in the decision to refuse to release the animals until all were well (See Knapp Depo., Vol. I, pp. 82, 92–95); and computing an impoundment fee to be charged to Docktor Pet and communicating the fee requirement to Docktor Pet (see Knapp Depo., Vol. I, pp. 121–123). Because these alleged activities of Defendant Head and the Solicitor's Office were not performed

for the purpose of "initiating prosecutions and presenting the State's case," *Imbler, supra,* 424 U.S. at 431, 96 S.Ct. at 995, Defendant Head is not absolutely immune from plaintiff's § 1983 suit.

**B.** *Qualified Immunity of the Individual Defendants*

Defendants contend that Defendants Knapp and Williams are entitled to good-faith qualified immunity from plaintiff's § 1983 claim. Although defendants did not specifically state as much, they also appeared to suggest in their reply brief that Defendant Head, if not entitled to absolute immunity, is likewise entitled to qualified immunity.[2]

In *Harlowe v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) the Supreme Court held that

government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Id.*, at 818, 102 S.Ct. at 2738. The court clarified this objective standard by stating that, on summary judgment, a judge may appropriately determine whether the law was clearly established at the time the action occurred and, if so, "the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Id.*, at 818–819, 102 S.Ct. at 2738.

The Supreme Court subsequently declared that the denial of a defendant's motion for summary judgment based on qualified immunity is an appealable final decision under the collateral order doctrine. *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). In outlining the scope of appellate review, the *Mitchell*

---

**2.** In their reply brief, defendants argued that Defendant Knapp's deposition testimony "do[es] not connect Defendant [Head] ... with any specific unconstitutional conduct." Defendants' Reply to Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment, p. 2. Because a defendant is not entitled to qualified immunity if he violates clearly established constitutional or statutory rights, defendants' argument regarding Defendant Head's "prosecutorial immunity" and lack of unconstitutional conduct may be construed as an argument that he did not violate clearly established constitutional rights and is thus qualifiedly immune from suit.

court stated that an appeals court only need determine a question of law:

> Whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions or, in cases where the district court has denied summary judgment for the defendant on the ground that even under the defendant's version of the facts the defendant's conduct violated clearly established law, whether the law clearly proscribed the actions the defendant claims he took.

*Id.*, at 528, 105 S.Ct. at 2816 (citation omitted). The *Mitchell* court further stated that

> Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts.

*Id.*, at 526, 105 S.Ct. at 2816.

Thus, in determining whether defendants are entitled to qualified immunity from plaintiff's § 1983 claim, this court must determine whether the defendants in fact committed acts which were clearly proscribed by statute or the constitution at the time the acts were committed.

The parties do not dispute that Defendants Knapp and Head determined to retain plaintiff's animals in the Animal Control Center until all were deemed well while accruing daily impoundment fees on each. See Knapp Depo., Vol. I, pp. 68–71, 81–82; Williams' Affidavit, ¶ 11; Williams' Depo.,

Vol. III, pp. 68–71. Nor do the parties dispute that the Animal Control Department did not give notice to Docktor Pet that it was impounding and retaining the plaintiff's property pursuant to the Cobb County Ordinance, § 3–5–1 *et seq.*, although the search and seizure of the property was executed pursuant to the Ga.Off'l Code Ann. §§ 16–12–14 and 16–13–71. See Knapp Depo., Vol. I, pp. 66–67. The defendants do not deny either that the Solicitor's Office calculated fees due for the return of the animals and imposed those on Docktor Pet without discussion. Nor do they deny that the Animal Control Department retained possession of Docktor Pet's property despite the repeated demands by Docktor Pet for their return.

■ Plaintiff contends that defendants retained possession of plaintiff's property and calculated and imposed impoundment fees for the return of the property in violation of clearly established laws.[3] Plaintiff further contends that defendants made defamatory statements about plaintiff with the intent of injuring and, in fact to the detriment of, plaintiff's business.[4] Thus, plaintiff has presented evidence sufficient to create a genuine issue as to whether defendants in fact committed acts in violation of clearly established laws.

The Fourteenth Amendment to the United States Constitution prohibits the deprivation of property or liberty without due process. Neither notice nor a hearing was afforded plaintiff with regard to the retention of the animals and other property despite repeated demands for their return or the imposition and calculation of fees for

---

**3.** Plaintiff has presented no evidence that Defendant Williams participated in any activities or decisions to retain possession of plaintiff's property or calculate or impose impoundment fees. Therefore, plaintiff has failed to meet its burden of "uncover[ing] evidence sufficient to create a genuine issue as to whether the defendant in fact committed [acts in violation of clearly established law]." *Mitchell, supra*, 472 U.S. at 526, 105 S.Ct. at 2816. Although Defendant Williams is entitled to summary judgment on the basis of qualified immunity on plaintiff's claim of deprivation of property without due process and just compensation, plaintiff has presented evidence sufficient to create a genuine issue as to whether Williams deprived plain-

tiff of its property and liberty in violation of the Fourteenth Amendment by allegedly defaming plaintiff in its business.

**4.** Plaintiff has presented evidence that the defendants issued statements to the press that were conceivably defamatory. See plaintiff's response brief, Exhibits 2–4. Although the defendants, by affidavit, state that any statements made were the truth or misquoted or never actually said, the determination of the truthfulness or defamatory nature of the statements must be made by the trier of fact. *See* Discussion, *infra*, Section III, B.

each day the animals were retained. Plaintiff also contends that it was deprived of its liberty and property without due process by the stigma plus injury allegedly caused to plaintiff as a result of defendants' allegedly defamatory remarks.

Finally, although defendants justified the retention of plaintiff's property on the basis of the Cobb County Ordinance (a clearly established law at the time), the Ordinance, while allowing officials to impound animals found to be cruelly treated, provides that the owner of such animals must be notified of the impoundment (§ 3–5–13). Furthermore, the Ordinance nowhere provides that animals deemed to be unhealthy may be retained, despite demands for their return by the owner, until deemed well by the Animal Control Department. Indeed, the Ordinance provides that "[a]ll impounded animals shall be kept at the Animal Control Center for a period not less than five (5) days *unless returned within such period*." § 3–5–14 (emphasis added). And under § 3–5–15 entitled "Redemption," the Ordinance provides that

> The owner of any animal impounded may regain possession of the animal upon payment of all applicable fees.... Such redemption shall not affect any criminal liability of the owner which may exist with respect to any violation of this chapter and shall not preclude proceedings against the owner for the purpose of pursuing sanctions under this chapter.

Under the clear wording of the Cobb County Ordinance, therefore, upon plaintiff's first demand for the return of its animals, defendants were required to allow plaintiff to pay a fee as set by the Board of Commissioners (§ 3–5–20) and regain possession of its animals despite plaintiff's alleged violations of the Ordinance.

Because plaintiff has presented evidence that defendants committed acts in violation of plaintiff's clearly established constitutional and statutory rights, defendants are not entitled to qualified immunity from plaintiff's § 1983 claim.

### C. *Liability of Cobb County*

Plaintiff does not allege that, on its face, the Cobb County Ordinance is unconstitutional. Plaintiff does, however, contend that if the Ordinance were written as Defendants Knapp and Head implemented it in this case, it would be "blatantly unconstitutional." Plaintiff contends that Defendant Knapp, as Director of the Cobb County Animal Control Department, is the final decision maker for the County in matters concerning animal control and that, as such, defendant Knapp's "edicts or acts may fairly be said to represent official policy" for the County.

■ Although a county cannot be held liable under 42 U.S.C. § 1983 solely on a theory of *respondeat superior,* it may be liable "when execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts injury...." *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978).

In *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), the Supreme Court considered the issue of a county's liability where one "whose edicts or acts may fairly be said to represent official policy" allegedly deprived a plaintiff of his constitutional rights. The *Pembaur* Court reversed the lower court order dismissing Pembaur's claim against the county where deputy sheriffs, acting pursuant to an order of the county prosecutor, violated Pembaur's constitutional rights. After noting that under Ohio law the county prosecutor could establish county policy under certain circumstances, the Court held, "in ordering the deputy sheriff to enter petitioner's clinic the county prosecutor was acting as the final decision maker for the county, and the county may therefore be held liable under § 1983." *Id.* 106 S.Ct. at 1301. The Court further noted that

> Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official has such authority is a question of state law.

*Id.* at 1300.

In the instant action, the Cobb County Ordinance, § 3–5–4, charges Defendant

Knapp with primary responsibility for enforcement of the Animal Control Ordinance and the operation of the Animal Control Center. The Director of Animal Control also promulgates rules and regulations for governing the Department. One rule, approved and adopted by the Cobb County Board of Commissioners and still in effect, provides that the Director of the Department must grant permission for the release of "information concerning the whereabouts or condition of animals...." Rules and Regulations, Cobb County Rabies/Animal Control, § II. H.A. 2, Exhibit 34 to Knapp Depo. Defendant Knapp herself concedes that when she acts on matters regarding animal control, she represents the County and, to a point, is the County. Knapp Depo., Vol. I, p. 94. Moreover, Defendant Knapp stated that she believed it was an official Cobb County policy to retain animals until deemed healthy. Knapp Depo., Vol. II, p. 66.

As noted above, Defendant Knapp interpreted and implemented the Cobb County Ordinance in a way to require the Animal Control Center to retain possession of impounded animals until all were healthy, all the while accruing daily room and board fees. See Knapp Depo., Vol. I., p. 69. Moreover, Defendant Knapp, in conjunction with the County Solicitor's Office, followed "guidelines" and a type of clearance procedure on what statements could be made to the press. See Knapp Depo., Vol. II, pp. 62–63. And it was Defendant Knapp who asked Defendant Williams if he would speak to the press. Williams' Depo., Vol. III, p. 84.

■ Accordingly, with regard to the matter at issue in plaintiff's § 1983 claim, Defendant Knapp was responsible for establishing final policy and thus, Cobb County may be held liable for her acts in this regard which may have violated plaintiff's constitutional rights.

### D. *Adequate Post-Deprivation State Remedies*

Defendants argue that plaintiff's § 1983 claim must be dismissed because plaintiff can pursue post deprivation state tort remedies. Citing *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) for the proposition that even an intentional deprivation of property without due process does not violate the Fourteenth Amendment where the state provides an adequate post deprivation remedy, defendants contend that plaintiff could pursue its tortious conversion and defamation claims in the state courts of Georgia and thus, plaintiff's Fourteenth Amendment rights were not violated.

■ Although the *Hudson* court rejected any distinction between negligent and intentional actions, it continued to distinguish random and unauthorized conduct from conduct pursuant to established state procedure. *Hudson, supra* 468 U.S. at 532–533, 104 S.Ct. at 3203. As the Fifth Circuit noted, if alleged acts represent official policy, the "actions might qualify as 'authorized' and 'pursuant to established state procedure' [and] if so, ... the availability of post deprivation remedies would not bar [plaintiff's] procedural due process action." *Augustine v. Doe*, 740 F.2d 322, 329 (5th Cir.1984). As noted above, Defendant Knapp represents the County and is the final decision maker on matters relating to animal control. She has stated that the official policy of Cobb County is to retain animals until they are deemed well and that, with regard to statements to the press, the defendants cleared their comments with County officials and followed guidelines established by the County. Accordingly, the alleged acts which allegedly deprived plaintiff of procedural due process may qualify as "authorized" and "pursuant to established [county] procedure."

For the above reasons, the Court DENIES defendants' motion for summary judgment on Count III of plaintiff's complaint.

### II. *Plaintiff's Tortious Conversion Claim*

Defendants contend that Count I of plaintiff's complaint, the tortious conversion claim, should be dismissed because none of the individual defendants converted

plaintiff's property to their own use and the County cannot be held liable in tort.

■ Under Georgia law "conversion is the unauthorized assumption and exercise of the right of ownership over personal property belonging to another which is contrary to the owner's rights." *Swish Manufacturing Southeast v. Manhattan Fire & Marine Insurance*, 675 F.2d 1218, 1219 (11th Cir.1982) (*quoting Shaw v. Wheat Street Baptist Church*, 141 Ga.App. 883, 884, 234 S.E.2d 711 (1977)). Plaintiff has not presented any evidence that any of the individual defendants assumed and exercised a right of ownership over plaintiff's personal property. While defendants in their official capacities may have engaged in activities which allegedly constituted conversion, no defendant *individually* converted plaintiff's property to his or her own use.

■ A judgment against defendants in their official capacities would impose liability on Cobb County as the entity they represent. *See Brandon v. Holt*, 469 U.S. 464, 471–472, 105 S.Ct. 873, 877–878, 83 L.Ed.2d 878 (1985). Cobb County, however, "is not liable to suit for any cause of action unless made so by statute" or the constitution. Ga.Off'l Code Ann. § 36–1–4 (1982). No law authorizes suit against the County for the torts of conversion and defamation.

Plaintiff argues that the Georgia Constitution, in providing that "private property shall not be taken, or damaged, for public purposes, without just and adequate compensation being first paid ...," authorizes a suit against Cobb County for the "taking" of its property. In neither Count I nor Count II of its complaint, however, does plaintiff claim that defendants took or damaged plaintiff's property for a public purpose without just compensation in violation of the Georgia Constitution. Plaintiff's complaint only states a claim for damages as a result of the torts of conversion and defamation.

Because Cobb County is immune from suit for the torts of conversion and defamation and the defendants in their official capacities can be sued only as representatives of the County, thereby exposing the County to liability, Counts I and II of plaintiff's complaint must be dismissed as to Cobb County and the defendants in their official capacities. In addition, because plaintiff has presented no evidence that the defendants individually converted plaintiff's property to their own use, Count I must be dismissed as to the individual defendants. Accordingly, the Court GRANTS defendants' motion for summary judgment as to Count I of plaintiff's complaint and DISMISSES Count I as to all defendants and Count II as to Cobb County and the defendants in their official capacities.

III. *Plaintiff's Defamation Claim*

Defendants argue that the individual defendants cannot be liable for defamation because: 1) Defendant Head's statements were privileged; and 2) Defendants Knapp and Williams spoke the truth.

A. *Defendant Head's Liability*

Under Georgia law, a "charge made against another in reference to his trade, office or profession, calculated to injure him therein, is actionable per se unless made under circumstances which constitute it a privileged communication.... The burden is on the defendant to establish this defense." *Sherwood v. Boshears*, 157 Ga. App. 542, 543, 278 S.E.2d 124 (1981) (*quoting Van Grundy v. Wilson*), 84 Ga.App. 429, 430, 66 S.E.2d 93 (1951). Privileged communications are divided into two classes: absolute and conditional. "The characteristic feature of absolute, as distinguished from conditional, privilege is, that in the former the question of malice is not open; all inquiry to good faith is closed." *Atlanta News Publishing Co. v. Medlock*, 123 Ga. 714, 719, 51 S.E. 756 (1905). The conditional privileges granted under Georgia law which Defendant Head raised in his defense is for "comments of counsel, fairly made, on the circumstances of a case in which he is involved and on the conduct of the parties in connection therewith." Ga. Off'l Code Ann. § 51–5–7(6) (1982).

Because the comments of counsel privilege is conditional, the question of malice is open. "To make the defense of privilege complete ... good faith, an interest to be upheld, a statement properly limited in its scope, a proper occasion, and publication to proper persons all must appear." *Sherwood, supra,* 157 Ga.App. at 543, 278 S.E.2d 124 (*quoting, Sheftall v. Central of Georgia Railway Co.,* 123 Ga. 589 51 S.E. 646 (1905)). "The absence of any one or more of these constituent elements will, as a general rule, prevent the party from relying upon privilege. All these questions are, however, generally questions of fact for a jury to determine according to the circumstances of each case." *Duchess Chenilles Inc. v. Masters,* 84 Ga.App. 822, 829, 67 S.E.2d 600 (1951).

Because the privilege Defendant Head asserts is conditional and good faith, among other factors, must be shown, the Court DENIES defendants' motion for summary judgment with regard to Defendant Head's liability for defamation.

### B. *Defendants Knapp's and Williams' Liability*

Defendants assert that Defendants Knapp and Williams cannot be liable for defamation because they spoke the truth. Although both defendants assert in affidavits that they either spoke the truth or did not say what the press attributed to them as saying, plaintiff has presented evidence of inconsistencies in defendants' statements and deposition testimony. See Plaintiff's Response Brief at 24–27.

Although "the truth of the charge made may always be proved in justification of an alleged libel or slander," Ga.Off'l Code Ann. § 51–5–6, "truthfulness is a question of fact for the jury." *Hub Motor Co. v. Zurawski,* 157 Ga.App. 850, 852, 278 S.E.2d 689 (1981). Because plaintiff has cited evidence creating a genuine issue as to the truth of the statements made by Defendants Knapp and Williams, the Court DENIES their motion for summary judgment on Count II of plaintiff's complaint.

In sum, the court:

1) DENIES defendants' motion for summary judgment as to Count III of plaintiff's complaint;

2) GRANTS defendants' motion for summary judgment as to Count I of plaintiff's complaint and hereby DISMISSES Count I as to all defendants; and

3) DENIES Defendants Head, Knapp, and Williams' motion for summary judgment as to Count II of plaintiff's complaint and GRANTS Defendant Cobb County's motion for summary judgment as to Count II, hereby DISMISSING Count II as to Cobb County and the defendants in their official capacities.