Teresa A. LAZARZ, Plaintiff,

v.

BRUSH WELLMAN, INC., and
David Nichols, Defendants.

Civ. A. No. 92–5681.

United States District Court,
E.D. Pennsylvania.

June 30, 1994.

David C. Balmer, Brooke M. Boyer, Reading, PA, for plaintiff.

Doreen S. Davis, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, Nancy A. Shaw, Bruce G. Hearey, Cleveland, OH, for defendants.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

The case involves multiple counts, pleading sexual harassment and discrimination as well as a number of other causes of action. Before the Court is the motion of defendants Brush Wellman, Inc., and David Nichols to dismiss the instant action for failure to state a claim, or, in the alternative, to grant summary judgment. After careful review of the motion and its accompanying documents,[1] the

---

1. Though the plaintiff's reply to defendants' summary judgment motion was apparently two days late, the Court will consider it *nunc pro tunc*.

response thereto by plaintiff, and the reply briefs filed by both sides, the Court concludes that summary judgment is appropriate on four of the eleven counts in plaintiff's complaint. The Court will also dismiss plaintiff's claims for compensatory damages under Title VII, and will deny without prejudice Brush Wellman's motion for summary judgment on the issue of sexual harassment. The remainder of the defendants' motion will be denied.

## I. BACKGROUND [2]

On November 2, 1987, defendant Brush Wellman, Inc., hired plaintiff Teresa A. Lazarz as a Personnel Coordinator at Brush Wellman's plant in Shoemakersville, Pennsylvania, at a weekly salary of $338.00. The position generally entailed providing clerical support to Doug Miller, the Human Resources Manager at the facility and plaintiff's immediate supervisor. Plaintiff has testified that, shortly after beginning her employment, she was subjected to an off-color sexual remark. While plaintiff was walking past David Sceurman, a co-worker, Sceurman made a comment along the lines of "fu\*\*ing up against the wall" with the plaintiff. Lazarz Dep. at 68. Plaintiff reported this comment to Miller, but informed him that she wanted to handle the matter. Subsequently, after consulting with her husband, she told Sceurman of her displeasure with his remark and said that any further sexual comments would lead her to contact an attorney and Andy Sandor, Sceurman's supervisor at the time. Sceurman apologized and the matter was dropped.

Plaintiff further testified that a year later, she was harassed by John Pallam, a corporate counsel for Brush Wellman. In the fall of 1988, plaintiff drove Pallam to the airport, and while she was driving, he put his hand on her leg. He then kissed plaintiff goodbye when he got out of the car. Plaintiff told no one other than her husband about the incident. Later that same year, Pallam brought plaintiff to his hotel room with the avowed intention of discussing union organizing activity at Brush Wellman's plant, but when she arrived, Pallam grabbed her and told her he wanted to sleep with her. Plaintiff was able to flee the hotel room after sending Pallam out for a condom. Plaintiff told no one of the event. Several months later, in early 1989, Pallam lured plaintiff to another hotel room, met her at the door to his room in his boxer shorts, threw her on to his bed, and started to kiss her. Plaintiff was able to make it to the door of the room, whereupon Pallam began to apologize to plaintiff, and allowed her to leave the room. Plaintiff reported this incident to Miller a few days later, indicating that she wanted to keep the matter between Miller and herself, requesting only that Miller keep Pallam away from her. She told no one else of the incident at the time.

In late November of 1989, plaintiff informed Phillip Bly, Brush Wellman's Risk and Benefits Manager, that Pallam had made certain advances to her, and that Pallam had tried to contact her by phone through the fall of that year. Bly prevailed upon the plaintiff to allow him to discuss the matter with his superiors. She acquiesced, and Bly discussed the Pallam incidents with Mike Hasychak, Brush Wellman's Assistant Treasurer and Assistant Secretary, and Clarke Waite, Brush Wellman's Chief Financial Officer. The three concluded that Hasychak and Waite would meet with Pallam and instruct him to cease contacting plaintiff, which they did. Hasychak then phoned plaintiff to inform her that Pallam would not contact her again, and that she should contact Hasychak if she had any further problems. Plaintiff indicated that she was satisfied with the resolution of the matter. Hasychak confirmed the telephone conversation via letter dated December 12, 1989.

In March of 1990, defendant David Nichols became plaintiff's supervisor. Before he began, plaintiff expressed to Dan Skoch, Corporate Director of Personnel, some concerns she had regarding Nichols's "style." Shortly thereafter, he questioned her concerning the

---

**2.** In examining the facts of the case, the Court views the evidence in the light most favorable to plaintiff, the nonmovant, resolving any conflicts in the evidence in her favor. *See Big Apple* *BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993).

letter from Hasychak, a copy of which was in plaintiff's personnel file, inquiring about the circumstances surrounding the Pallam incident. A few months later, Nichols gave plaintiff a new job description, increasing plaintiff's job duties without increasing her salary. Plaintiff believed that the person at one of Brush Wellman's subsidiaries who held a similar position was paid more than plaintiff was.

In January of 1991, Sceurman, who had now become the manager of the Shoemakersville plant, asked plaintiff to have sex with him. She refused and he dropped the matter. She told no one at Brush Wellman about the incident. In February of that year, Sceurman allegedly told John Harlan, a corporate vice-president, that plaintiff's husband was out of town. Harlan then told plaintiff he knew her husband was out of town, and asked her to have sex with him. Harlan had previously had consensual sex with the plaintiff on two nights in January or February of 1991. Plaintiff told no one of her sexual encounters with Harlan.

Nichols was absent from the Shoemakersville plant for three consecutive weeks in February and March of 1991. Nichols was told by three employees in the Human Resources Department that plaintiff's performance and attendance during his absence had been poor. Nichols returned on March 12, and held a meeting with plaintiff on March 13 to discuss her attendance and performance. Nichols gave plaintiff a memo that listed various requirements and concerns, one of which was "situations of sexual harassment," Lazarz Dep. ex. 7, and mentioned to her the possibility of leaving Brush Wellman and entering a different line of work such as "working on a cruise ship or at a travel agency," *id.* at 173–74. He instructed her to take a two day leave of absence to prepare a written action plan discussing how she planned to address the issues raised at the meeting.

Plaintiff returned to work the following week without a written plan. Instead, she handed to Sceurman a letter from her lawyer, indicating that plaintiff would not answer the memo given to her by Nichols, and that the company was punishing the victim of sexual harassment rather than the perpetrator. Sceurman told plaintiff to leave the plant and to not return. On March 27, a meeting was held in office of plaintiff's attorney to discuss how plaintiff could resume her employment at Brush Wellman. This was followed up by a meeting at the company between plaintiff, Nichols, and Skoch. The second meeting ended inconclusively, with plaintiff and the Brush Wellman unable to reach agreement on how to resume plaintiff's career with the company. Plaintiff never returned to her position and Brush Wellman considered her to have voluntarily resigned as of April 15, 1991.

Subsequently, plaintiff's position was filled by William Key, who was compensated at a rate of $518 per week. At the time of plaintiff's departure from Brush Wellman, she was making $449 per week.

In August of 1991, Plaintiff filed a complaint with the Pennsylvania Human Relations Commission and the Equal Employment Opportunity Commission (the "EEOC"). On May 29, 1992, the EEOC issued its determination letter, finding "no reasonable cause to believe the charge is true." Lazarz Dep. ex. 12. Plaintiff instituted the instant action on September 30, 1992.

## II. DISCUSSION

### A. *Standard for Summary Judgment*

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When ruling on a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The Court must accept the nonmovant's allegations as true, and resolve conflicts in the nonmovant's favor. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993). The moving party bears the initial burden of pointing out the absence of genuine issues of material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106

S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986), but once it has done so, the nonmoving party cannot rest on its pleadings, *see* Fed.R.Civ.P. 56(e). Rather, the nonmovant must come forward with facts showing that a genuine issue exists. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). If there is no genuine issue of fact that the claim of the nonmoving party is time-barred as a matter of law, the moving party is entitled to summary judgment. *See, e.g., Lorance v. AT & T Technologies,* 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989) (affirming summary judgment for time-barred Title VII claim). In a Title VII case, "[s]ummary judgment is inappropriate ... if the plaintiff establishes a prima face case and counters the defendant's proffered explanation with evidence raising a factual issue regarding the employer's true motivation for [its actions]." *Jalil v. Avdel Corp.,* 873 F.2d 701, 707 (3d Cir.1989), *cert. denied,* 493 U.S. 1023, 110 S.Ct. 725, 107 L.Ed.2d 745 (1990).

### B. *Plaintiff's Claims*

Defendant seeks summary judgment on all eleven counts of plaintiff's complaint.

#### 1. Claims under the Civil Rights Act of 1991

■ Defendants have challenged any claim by plaintiff for compensatory relief under Title VII. Since the activities in question occurred before the effective date of the non-retroactive 1991 amendments that added such relief to Title VII, *see Landgraf v. USI Film Prods.,* —— U.S. ——, —— – ——, 114 S.Ct. 1483, 1497–1501, 128 L.Ed.2d 229 (1994), the defendants' motion will be granted. Plaintiff cannot recover compensatory damages for any Title VII violation by defendants.[3]

#### 2. Claims of sexual harassment

■ Counts two and eight of plaintiff's complaint allege claims of sexual harassment against Brush Wellman and Nichols, respectively. Plaintiff claims that the activities of Sceurman, Pallam, and Harlan created a hostile work environment. *See Meritor Sav.*

Bank, *FSB v. Vinson,* 477 U.S. 57, 67–68, 106 S.Ct. 2399, 2405–06, 91 L.Ed.2d 49 (1986). The Third Circuit has held that an employee seeking to establish a claim of hostile work environment sexual harassment must prove five elements:

> 1) the employee[ ] suffered intentional discrimination because of [her] sex; 2) the discrimination was pervasive and regular; 3) the discrimination detrimentally affected the plaintiff; 4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability.

*Andrews v. City of Philadelphia,* 895 F.2d 1469, 1482 (3d Cir.1990). Both defendants argue that plaintiff has failed to establish these elements. The Court agrees with defendant Nichols. When asked during her deposition if Mr. Nichols sexually harassed her in any way, plaintiff replied in the negative. Lazarz Dep. at 138. Notwithstanding the arguments presented in plaintiff's brief, the straightforward answer by plaintiff negates any claim of sexual harassment against Nichols. Unless plaintiff actually felt a "detrimental effect" from the alleged harassment, she cannot recover. *See Andrews,* 895 F.2d at 1483. As to Brush Wellman, however, the Court is reluctant to reach a conclusion in light of the Third Circuit's recent decision in *Bouton v. BMW of N. Am.,* 29 F.3d 103 (3d Cir.1994), which clarifies the law on the determination of respondeat superior liability, and which is not reflected in the briefs filed by the parties in this case. Therefore, the Court will enter judgment in defendant Nichols's favor on count eight, but will deny without prejudice defendant Brush Wellman's motion to dismiss count two, and will grant Brush Wellman leave to file a motion in light of *Bouton.*

#### 3. Claims of sexual discrimination and constructive discharge

■ Counts one and seven of plaintiff's complaint allege claims of sexual discrimination against Brush Wellman and Nichols, respectively. Count three alleges that Brush

---

**3.** This ruling does not preclude any entitlement to compensatory damages plaintiff may have under the Pennsylvania Human Relations Act. *See* Pa.Stat.Ann. tit. 43 § 955 (Supp.1994).

Wellman constructively discharged plaintiff. To make out a prima facie case of sexual discrimination, "plaintiff has the burden of establishing that she is a member of [a] protected class who was dismissed despite her qualifications and that she was replaced by a person in a nonprotected class." *Kuhn v. Philip Morris U.S.A. Inc.,* 814 F.Supp. 450, 453 (E.D.Pa.1993); *see McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Defendants contend that plaintiff cannot establish her prima facie case because she was not discharged. Plaintiff counters that she was constructively discharged. To establish constructive discharge, plaintiff must show that "the conduct complained of would have the foreseeable result that working conditions would be so unpleasant or difficult that a reasonable person in the [plaintiff's] shoes would resign." *Goss v. Exxon Office Sys. Co.,* 747 F.2d 885, 887–88 (3d Cir.1984); *see Gray v. York Newspapers, Inc.,* 957 F.2d 1070, 1079 (3d Cir.1992). Given the evidence concerning the hostile work environment claim, plaintiff's claim that she was placed on the last step of Brush Wellman's progressive discipline system without any intervening disciplinary action, the conflict in the evidence concerning plaintiff's activities during Nichols' three week absence, *compare* Altland Dep. at 23 (stating that plaintiff was repeatedly late during Nichols's absence) *with* Aff. of Linda K. Underwood (averring that plaintiff was not tardy or absent from work), and the dispute concerning the topic of "situations of sexual harassment," broached during plaintiff's meeting with Nichols, the Court cannot find that defendants have demonstrated an absence of genuine factual issues as to the claim of sexual discrimination, nor can it find that plaintiff was not constructively discharged as a matter of law. *See Levendos v. Stern Entertainment, Inc.,* 860 F.2d 1227, 1229 & n. 4 (3d Cir.1988) (noting that defendant bears burden of demonstrating absence of material fact issues, even though plaintiff has the ultimate burden of persuasion); *Chipollini v.*

*Spencer Gifts, Inc.,* 814 F.2d 893, 899 (3d Cir.) (*in banc*), *cert. dismissed,* 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987).[4]

### 4. Equal Pay Act claim

Counts four and nine of plaintiff's complaint allege a violation of the Equal Pay Act, 29 U.S.C. § 206, and the Pennsylvania Equal Pay Law, Pa.Stat.Ann. tit. 43 §§ 336.1–.10, by Brush Wellman and Nichols, respectively. Defendants attempt to interpose the statute of limitations, 29 U.S.C. § 255(a); Pa.Stat.Ann. tit. 43 § 336.5(b), but the testimony of plaintiff concerning the different levels of pay between men and women at Brush Wellman, especially the alleged discrepancy in bonuses for employees running a department when a supervisor was out, Lazarz Dep. at 219–224; Bordner Dep. at 42–44, raises a genuine issue of material fact as to whether defendants may be liable under the theory of continuing violation. *See Nealon v. Stone,* 958 F.2d 584, 591 (4th Cir.1992). And plaintiff's evidence that the man who replaced her, William Key, was paid at a higher rate than she was may be sufficient to establish a prima facie case under the Equal Pay Act. *See Patkus v. Sangamon–Cass Consortium,* 769 F.2d 1251, 1260 (7th Cir. 1985); *Peltier v. City of Fargo,* 533 F.2d 374 (8th Cir.1976).

However, the Equal Pay Act claim against Nichols must be dismissed, since there is no allegation in the complaint, nor is there evidence, that Brush Wellman was not plaintiff's employer, or that Brush Wellman "can be reached only by disengaging complicated inter- or intra- corporate concatenations." *Martin v. Easton Publishing Co.,* 478 F.Supp. 796, 799 (E.D.Pa.1979). Both Equal Pay Acts, by their own terms, are applicable only to an employer, *see* 29 U.S.C. § 206(d)(1); Pa.Stat.Ann. tit. 43 § 336.3, and there is no allegation or evidence that Nichols was plaintiff's employer. Judgment will be entered in defendant Nichols's favor on count nine.

4. Though not raised by the defendants, the Court notes in passing that plaintiff's claim of constructive discharge may not state a legally cognizable claim, in that the claim is more accurately char-

acterized as an element of plaintiff's claim of sexual discrimination. *See Gray,* 957 F.2d at 1078–79.

### 5. Intentional Infliction of Emotional Distress

 Counts five and ten of plaintiff's complaint allege intentional infliction of emotional distress by Brush Wellman and Nichols, respectively. Defendants claim that plaintiff's claim is barred by the Pennsylvania Workmen's Compensation Act, Pa.St. Ann. tit. 77, §§ 1–1066. The statute bars actions in tort by an employee against her employer, with certain limited exceptions. *See Rodgers v. Prudential Ins. Co. of Am.,* 803 F.Supp. 1024, 1026–29 (M.D.Pa.1992). One of the exceptions is where the intentional infliction of emotional distress is due to sexual harassment. *See id.* at 1029. Given the evidence in the record supporting plaintiff's claim of sexual harassment, the defendants' imposition of the worker's compensation act must fail at this time. Defendants also challenge plaintiff's showing of a prima facie case of intentional infliction of emotional distress, claiming that the actions plaintiff complains of do not rise to the level of "extreme or clearly outrageous" conduct needed to show intentional infliction of emotional distress, *see Andrews,* 895 F.2d at 1486–87, and that plaintiff has failed to show emotional distress. Though a finding of outrageous conduct in the employment context is "extremely rare," *Cox v. Keystone Carbon Co.,* 861 F.2d 390, 395 (3d Cir.1988), it may be found to exist where there has been sexual harassment plus some sort of retaliation, *see, e.g., id.; Schaffer v. National Can Corp.,* 565 F.Supp. 909, 915 (E.D.Pa.1983), evidence of which is present in the record. Likewise, plaintiff has testified that she suffered emotional distress in connection with the end of her employment at Brush Wellman, and has submitted an expert's opinion that plaintiff suffered extreme emotional distress. *See* McKenzie Aff. at 72 & ex. 1. Given the evidence in the record, the Court cannot conclude that defendant has met its burden of demonstrating the absence of a genuine issue of material fact.

### 6. Breach of Implied Employment Contract and Intentional Interference with a Business Relationship

Plaintiff does not contest defendants' motion to dismiss count six of the complaint, alleging breach of an implied employment contract, and count eleven, alleging intentional interference with a business relationship. Counts six and eleven shall therefore be dismissed.

## III. CONCLUSION

The Court will therefore grant judgment to defendants on counts six, eight, nine, and eleven of plaintiff's complaint. The plaintiff's claim for compensatory damages under Title VII will be dismissed. Brush Wellman's motion for summary judgment as to count two will be denied without prejudice. In all other respects, the defendants' motion will be denied.