**Robert RODGERS and Stephanie Rodgers, his wife, Plaintiffs,**

**v.**

**PRUDENTIAL INSURANCE COMPANY, OF AMERICA, Defendant.**

**No. CV–91–1257.**

United States District Court, M.D. Pennsylvania.

Oct. 15, 1992.

Gregory R. Reed, Harrisburg, Pa., for plaintiffs.

Mark Fontana, Reed Smith Shaw and McClay, Harrisburg, Pa., for defendant.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND

Plaintiffs Robert Rodgers and Stephanie Rodgers allege in this diversity action [1] that Robert Rodgers was wrongfully demoted and deprived of a promotion by his former employer, Prudential Insurance Company of America ("Prudential"). They further allege that Rodgers was insulted and threatened by his immediate supervisor, Peter Barrasse, Jr., the District Manager. Rodgers was employed by Prudential as a sales agent. At one point, he was promoted to a sales manager. In April, 1990, he was demoted to the position of sales agent for alleged job-related improprieties.

Later that year, Rodgers accepted an employment opportunity with another insurance company. He had already leased office space and purchased office furniture in preparation for his new job when, in December, 1990, Barrasse threatened to report Rodgers to authorities for alleged business improprieties and ruin his insurance career, unless he agreed to forgo the opportunity to go with a competitor and agreed to stay with Prudential in the capacity of office manager. In January, 1991, after working in his new managerial position for one month, Rodgers was told that he had never been promoted and was summarily fired by Barrasse.

1. Jurisdiction exists under 28 U.S.C. § 1332.

Plaintiffs allege four causes of action against Prudential: (1) intentional infliction of emotional distress (Count I); (2) fraud (Count II); (3) breach of contract (Count III) and (4) loss of consortium (Count IV) (by Stephanie Rodgers only). The defendant has moved for summary judgment on all counts.

## STANDARD OF REVIEW

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that *there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."* Fed. R.Civ.P. 56(c) (Emphasis supplied).

... [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an .essential element of her case with respect to which she has the burden of proof.

*Celotex v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. He or she can discharge that burden by "showing ...

that there is an absence of evidence to support the nonmoving party's case." *Celotex, supra,* 477 U.S. at 323 and 325, 106 S.Ct. at 2553 and 2554.

■ Issues of fact are genuine "only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph,* 842 F.2d 689, 694 (3d Cir.1988), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Material facts are those which will affect the outcome of the trial under governing law. *Anderson, supra,* 477 U.S. at 248, 106 S.Ct. at 2510. In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Company,* 862 F.2d 56, 59 (3d Cir.1988).

## DISCUSSION

*Pennsylvania Workmen's Compensation Bar against civil actions in tort*

■ Before reaching the merits of plaintiffs' claims for fraud and intentional infliction of emotional distress, we are confronted with a threshold issue: whether plaintiff or his wife can maintain a civil action against Prudential based on tortious acts allegedly committed by his supervisor in the course of employment, or whether such claims are barred by the exclusivity provision [2] of the Pennsylvania Workmen's Compensation Act, Pa.Stat.Ann. tit. 77, §§ 1–1066 (1992) ("WCA" or the "Act").

With limited exceptions, an employee's sole recourse for injuries allegedly sustained in the course of employment is a claim under the WCA.[3] Under the statutory scheme, employees relinquish the right to bring an action in tort against their employer in exchange for the greater certainty of receiving benefits under the WCA

---

**2.** Employer liability under the Act is exclusive under WCA section 303(a), which provides:

(a) The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes [sic], his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or

otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108. Pa.Stat.Ann., tit. 77, § 481(a) (1992).

**3.** Robert Rodgers filed a claim for workmen's compensation for the injuries at issue here, which was denied.

for a work-related injury. *Danese v. Morrison–Knudsen/Slattery*, 784 F.Supp. 228, 229 (E.D.Pa.1992), citing *Kuney v. PMA Insurance Co.*, 525 Pa. 171, 578 A.2d 1285, 1286 (1990). To maintain the integrity of the statutory system, there are few exceptions to the general rule of exclusivity. Only a few categories of cases "escape the coverage of the exclusivity clause." *Danese, supra,* 784 F.Supp. at 229.

▮ Plaintiff argues that the judicially created independent tort exception to the WCA permits him to maintain this action.[4] Under the intentional tort exception, an employee may maintain a civil cause of action against his or her employer for torts committed intentionally by his employer, his supervisor or fellow employees.

Although the intentional tort exception has been the underpinning, tacit and otherwise, of numerous Pennsylvania Superior Court and federal district court decisions,[5] its status as an accepted tenet of Pennsylvania workmen's compensation law is far from clear. The exception has been rejected outright by the state's highest court in two recent decisions.

In a 1989 decision, *Barber v. Pittsburgh Corning Corp.*, 521 Pa. 29, 555 A.2d 766 (1989),[6] the Pennsylvania Supreme Court repudiated Pennsylvania Superior Court decisions relying on the exception and criticized the lower courts' willingness to carve out exceptions to the Occupational Disease Act ("ODA") and the WCA not specifically authorized by the legislature or endorsed by the state's highest court. The Supreme Court chided in *Barber:*

The viability of any 'intentional tort exception' in Pennsylvania has at best been unclear. This Court has never acknowledged or recognized such an exception to the exclusivity provisions of our workmen's compensation statute: This court has addressed the concept of an intentional tort exception just once. See, e.g., *Evans v. Allentown Portland Cement Co.*, 433 Pa. 595, 252 A.2d 646 (1969), (a decedent who was killed as a result of his employer's alleged willful and unlawful conduct was bound to the provisions of the WCA and was precluded from bringing an action at common law). Any validity to the analysis in *Readinger*[7] has been lost when the 'accident' concept was discarded by the legislature in 1972 and replaced with the 'injury' approach....[8] (Citations omitted.) ....

---

**4.** The statutorily created third party exception to WCA exclusivity does not apply because plaintiff is not alleging that Barrasse acted out of purely personal motives. See: *Vosburg v. Connolly*, 405 Pa.Super. 121, 591 A.2d 1128, 1132 (1991) (Fact that assault on employee by owner of the business which employed him was not for reasons personal to the injured employee but rather was connected with his employment rendered the third party exception inapplicable.)

Under section 301(c)(1) of the Act, injuries caused by a third party or a fellow employee from conduct arising out of "purely personal" motives, i.e. motives which are not job-related or based on the employee's status as an employee, are not covered by the Act. Pa.Stat.Ann., tit. 77, § 411(1) (1992). This exception permits an employee to maintain a "common law tort action against his employer 'whenever his or her injury is the result of an attack or assault by a third person or fellow employee for reasons that are personal ... and not connected with the victim's employment.'" *Shaffer v. Procter & Gamble*, 412 Pa.Super. 630, 604 A.2d 289, 292 (1992), citing *Vosburg, supra,* 405 Pa.Super. at 126–27, 591 A.2d at 1131.

Barrasse's alleged motivation for threatening and harassing plaintiff was to coerce him to remain on the job and refrain from opening his own office in competition with Prudential.

**5.** See the list of citations at p. 1029 *infra.*

**6.** Although *Barber, supra,* addressed the availability of an intentional tort exception to the exclusivity provision of the Occupational Disease Act ("ODA"), Pa.Stat.Ann., tit. 77, §§ 1201 to 1603, the analysis applies to the equivalent provision of the WCA.

The ODA is the counterpart to the WCA for workers who contract an occupational disease. It contains an exclusivity provision, Pa.Stat.Ann., tit. 77, 1403, similar to that of the WCA. See: *Barber, supra,* 555 A.2d at 769.

**7.** The Court is referring to *Readinger v. Gottschall,* 201 Pa.Super. 134, 191 A.2d 694 (1963), the first Pennsylvania appellate decision to suggest the existence of an intentional tort exception to the WCA. See: *Barber, supra,* 555 A.2d at 771.

**8.** The Court's reference is to the 1972 amendment of the WCA definition of a compensable injury, which eliminated the requirement that the injury arise from a work-related accident. Under the definition in effect prior to 1972, to

... [T]he legislative intent to provide a blanket exclusivity for employers under the ODA cannot be ignored. Attempts to induce the Court through policy arguments to the contrary must be unavailing. We are constrained to follow the clear legislative mandate notwithstanding the appealing quality of the arguments marshalled to support a contrary approach. Once the legislative judgment has been made, we are bound to accept it.... (Citations omitted.).... It is essential to the proper functioning of our system of government that each branch of government fulfills its constitutionally prescribed responsibilities and avoids intruding into areas vested in the sister branches of government. Moreover, that which cannot be done directly should not surreptitiously be achieved through a tortured interpretation of legislative pronouncements.

*Barber, supra,* 555 A.2d at 771–72.

The Supreme Court's refusal in *Barber, supra,* to read an intentional tort exception into the ODA is consistent with its decision in a WCA case two years earlier, *Poyser v. Newman & Co., Inc.,* 514 Pa. 32, 522 A.2d 548 (1987). Poyser, an employee of Newman & Co. ("Newman"), was injured in the course of his employment at Newman's factory while using a "notching machine". Poyser filed a civil action against Newman alleging that his injury was the result of Newman's willful disregard for employee safety and its deliberate refusal to comply with OSHA regulations mandating the use of a "feeding" device with the notching machine. Newman defended on the ground that the action was barred by the exclusivity provision of the WCA. On appeal, the Supreme Court agreed and affirmed entry of judgment on the pleadings in Newman's favor.[9]

The Supreme Court concluded that it would be inconsistent with the language of the Act to read an intentional tort exception into the WCA, stating, as it did in *Barber* two years later, that if such an exception were to be recognized, it would have to be created by the legislature, not the courts:

There is no Pennsylvania judicial authority supportive of the result the appellant [Poyser] seeks. The argument he presents is one based entirely on his view of the relationship between the Act and other laws and regulations which bear upon safety in the workplace. According to the appellant, if an employer is to be allowed to escape common law liability for intentional misconduct causing harm to a worker, governmental policies aimed at promoting job safety will be undermined....

It is true that the appellate courts of some other states have held that wanton and willful misconduct by an employer is tantamount to an intentional tort, and as such, prevents the operation of a statutory exclusive-remedy provision.... (Citations omitted.).... It must be noted, however, that those cases rested on provisions in the state workmen's compensation statutes which expressly preserved the right of an employee to sue in tort where his injury was caused by the employer's intentional wrongdoing. There is no such provision in The Pennsylvania Workmen's Compensation Act.

The appellant's argument is an interesting one; but it is one that must be resolved by the General Assembly, not this Court. What he is asking us to do is to engraft upon section 303(a) of the Act an exception the legislature did not see fit to put there. A reading of the Act will disclose that the legislature was not unmindful of the issue of intentionally caused harm.... Since it is clear that the legislature had the issue of intentional harm in mind, and yet did not mention it in connection with section 303(a), we are constrained to conclude that the leg-

be compensable under the Act an injury must have resulted from an employment-related accident. See the citations at *Barber, supra,* 555 A.2d at 771 n. 13.

9. Although Poyser's suit also included a products-liability claim, that theory of recovery was not offered by the plaintiff, or considered by the Court, as a basis for negating the applicability of section 303(a). *Poyser, supra,* 522 A.2d at 549.

islature did not intend the result for which the appellant argues.

*Poyser, supra,* 522 A.2d at 551.

*Barber* and *Poyser* notwithstanding, Pennsylvania Superior Court and federal district court decisions have routinely excluded two types of intentional torts from the Act's coverage.[10] The claims which have been excluded routinely are: (1) those based on allegations of intentional infliction of emotional distress due to sexual or racial harassment by a fellow employee or a supervisor (See, e.g., *Price v. Philadelphia Electric Co.,* 790 F.Supp. 97, 99–100 (E.D.Pa.1992) (racial harassment); *Dunn v. Warhol,* 778 F.Supp. 242, 243–44 (E.D.Pa. 1991) (sexual harassment); *Hurst v. Beck,* 771 F.Supp. 118, 120–22 (E.D.Pa.1991) (sexual harassment); *Gruver v. Ezon Products, Inc.,* 763 F.Supp. 772, 775–76 (M.D.Pa.1991), (sexual harassment); *Arnold v. Kimberly Quality Care Nursing Service,* 762 F.Supp. 1182, 1183–84 (M.D.Pa.1991) (sexual harassment); *Garvey v. Dickinson College,* 761 F.Supp. 1175, 1191–92 (M.D.Pa.1991) (sexual harassment) and *Schweitzer v. Rockwell International,* 402 Pa.Super. 34, 586 A.2d 383 (1990); [11] and (2) those based on allegations that the employer engaged in a systematic pattern of intentionally withholding from employees information vital to their health, safety and well-being (See, e.g., *Koslop v. Cabot Corp.,* 631 F.Supp. 1494, 1496–97 (M.D.Pa.1986) (intentional concealment of employees' contraction of beryllium-related illness); *Koslop v. Cabot Corp.,* 622 F.Supp. 222, 224 (M.D.Pa.1985) (same); and *Neal v. Carey Canadian Mines, Ltd.,* 548 F.Supp. 357 (E.D.Pa.1982), *aff'd sub nom, Van Buskirk v. Carey Canadian Mines, Ltd.,* 760 F.2d 481 (3d Cir.1985) (failure to warn of occupational risk of cancer as a result of asbestos exposure).

Despite the Pennsylvania Supreme Court's outright rejection of the intentional tort exception in *Barber, supra,* and *Poyser, supra,* it went on, in a 1992 decision, to carve out an exception for the fraudulent misrepresentation of employee medical test results. In *Martin v. Lancaster Battery Co., Inc.,* 530 Pa. 11, 606 A.2d 444 (1992), the Pennsylvania Supreme Court held that section 303(a) does not preclude an employee from maintaining a tort action against his employer for the fraudulent misrepresentation of medical test results. Martin was suing his employer, a battery manufacturer, alleging that over a three year period, a Lancaster employee deliberately falsified Martin's blood tests. The tests were a precautionary measure mandated by federal regulations to monitor employees' exposure to lead. As a result of his continued exposure to lead, and of the delayed diagnosis, Martin suffered serious medical complications including chronic lead toxicity, lead neuropathy, hypertension, gout and renal insufficiency.

The Supreme Court explained its holding by surveying the rationale of other courts which reached the same conclusion, stating:

Courts in other jurisdictions have considered the exclusivity issue presently before this Court and some have determined that the applicable workmen's compensation statute is not the exclusive remedy for the aggravation of an employee's work-related injury where the

**10.** For a list of post-*Poyser* decisions rejecting claims against an employer for the intentional infliction of emotional distress, on the ground that such claims are precluded by the WCA exclusivity provision, see *Hurst v. Beck,* 771 F.Supp. 118, 120 n. 4 (E.D.Pa.1991)

**11.** Cases involving allegations of sexual harassment could arguably be excluded from WCA coverage under the common law statutory third party exception. Many decisions do not specify whether the basis for their ruling is the statutory third party exception or the judicially created intentional tort exception, or some other exception.

However, the reasoning stated by several courts is more consistent with application of the statutory third party exception than with application of a judicially created intentional tort exception. See, e.g., *Hurst, supra,* 771 F.Supp. at 121; *Schweitzer, supra* (Court reasoned that a common law tort claim is not preempted by the Act, since the claim alleged arose from harassment purely personal in nature and is not part of any legitimate employer employee relationship) and *Gruver, supra,* 763 F.Supp. at 775–76 ("[H]arassment of a sexual nature in the workplace has nothing to do with work, but rather stems from reasons personal to the party foisting his attentions on a co-worker.").

employer's fraudulent misrepresentation has been alleged.... (Citations omitted.) .... The reasons advanced to support recovery for such injuries in a common law action include ...: 1) '[a] hazard of employment does not include the risk that the employer will deprive an employee of his worker's compensation rights to medical treatment and compensation'.... (Citation omitted)....; 2) there is a strong state interest in deterring an employer from deliberately concealing the nature and extent of the danger following an initial injury,.... (Citation omitted.) ....; and 3) '[a]n employer's fraudulent concealment of diseases already developed is not one of the risks an employee should have to assume. Such intentionally-deceitful action goes beyond the bargain struck by the Compensation Act.' ... (Citations omitted.)

*Id.*, 606 A.2d at 447.

Based on these considerations, the Supreme Court concluded that the Pennsylvania legislature "could not have intended to insulate employers from liability for the type of flagrant misconduct at issue herein by limiting liability to the coverage provided by the Workmen's Compensation Act." Stating that there "is a difference between employers who tolerate workplace conditions that will result in a certain number of injuries or illnesses and those who **actively** mislead employees already suffering as the victims of workplace hazards, thereby precluding such employees from limiting their contact with the hazard and from receiving prompt medical attention and care", the Court carved out an exception to the exclusivity clause for such conduct. *Id.*, 606 A.2d at 448.

The Pennsylvania Supreme Court summarily distinguished *Barber, supra,* and *Poyser, supra,* on their facts. *Poyser,* the Court stated, was distinguishable because the fraudulent misrepresentations were allegedly made to a federal safety inspector, not directly to the injured employee as was the case in *Martin. Martin, supra,* 606 A.2d at 446–47. The Court distinguished

*Barber, supra,* on similar grounds, stating that it differed from *Martin* in that the employee was not alleging fraudulent misrepresentation by the employer, nor was he seeking to recover for pre-existing work-related injury allegedly made worse by the employer's tortious conduct. *Martin, supra,* 606 A.2d at 447.

Although there has been little opportunity for analysis of the state of Pennsylvania Workmen's Compensation law post-*Martin,* at least one court has interpreted *Martin* as carving out "a very narrow exception" to the WCA "for fraudulent misrepresentation to an employee that result in adverse health consequences to that employee." *Henry v. Twin City Fire Insurance Co.,* Civil No. 92–1504, slip op. at 2 (E.D.Pa. June 10, 1992) (WESTLAW 1992 WL 129619).

Despite the unsettled state of Pennsylvania law, one point is clear. No court has excluded from the WCA a claim involving circumstances even remotely resembling those alleged here, and this court is not inclined to expand the WCA exceptions beyond the parameters currently recognized by the Pennsylvania courts. It is not our role to expand Pennsylvania law or make new law by adding to the list of intentional torts excluded from WCA coverage. Moreover, we are convinced that (1) the Pennsylvania Supreme Court would not endorse an exception so expansive as to include the circumstances alleged here; and (2) an interpretation that expansive would be ill-conceived, in that it would be wholly inconsistent with the overriding objective of limiting the claims for which an employee can seek redress against his employer outside WCA coverage.

For all of these reasons, we find as a matter of law that the facts alleged here do not fall within any recognized exception to the exclusivity provision of the WCA. Plaintiffs' claims for *intentional infliction of emotional distress* and *fraud* are, therefore, barred by section 303(a) of the Pennsylvania WCA.[12]

---

12. Plaintiff maintains, however, the right to bring a civil action against Barrasse personally.

No claim against Barrasse was alleged in this action, and we express no opinion as to the

*Intentional Infliction of emotional distress*

■ Even if plaintiffs' intentional infliction claim were not barred by the WCA, it would fail on the merits. Under Pennsylvania law, a plaintiff seeking to recover on a claim of intentional infliction of emotional distress must prove that the conduct complained of is "extreme or clearly outrageous." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1486–87 (3d Cir.1990). "The 'conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Hurst, supra*, 771 F.Supp. at 121 n. 5, quoting *Buczek v. First National Bank of Mifflintown*, 366 Pa.Super. 551, 531 A.2d 1122, 1125 (1987). The initial question before the court is whether the conduct alleged reaches the requisite level of outrageousness. *Hurst, supra*, 771 F.Supp. at 121. "Rarely will conduct in the employment context rise to [the] level [of] outrageousness sufficient to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Hurst, supra*, 771 F.Supp. at 121, citing *Cox v. Keystone Carbon*, 861 F.2d 390, 395 (3d Cir.1988). The Third Circuit Court of Appeals observed in *Cox, supra*, that "the only instances in which courts applying Pennsylvania law have found conduct outrageous in the employment context is where an employer engaged in both sexual harassment and other retaliatory behavior against the employee." *Id.* Along the same lines, the federal district court for the Eastern District of Pennsylvania held in *Levito v. Hussman Foods, Inc.*, Civil No. 89–5967, slip op. at 12–13 (E.D.Pa. May 15, 1991) (WESTLAW 1991 WL 86898) (appeal pending) that absent allegations of sexual harassment, there can be no claim for intentional infliction of emotional distress arising out of an employment context."

The tight constraints placed on assertion of an intentional infliction claim arising out of an employment context make it impossible for plaintiff to prove his claim. While Barrasse's alleged conduct is outrageous and inexcusable, there are no allegations of sexual harassment or retaliation, making it impossible for plaintiff to satisfy the legal requirements for a claim against Prudential of intentional infliction of emotional distress.

*Fraud*

■ Plaintiff's fraudulent misrepresentation claim also fails on the merits. To recover on a claim of fraudulent misrepresentation, a plaintiff must prove by clear and convincing evidence: (1) false representation of an existing fact, (2) scienter, (3) justifiable reliance, and (4) harm stemming from the misrepresentation. *Chrysler Credit Corp. v. First National Bank*, 746 F.2d 200, 208 (3d Cir.1984); *Loranger Plastics Corp. v. Incoe Corp.*, 670 F.Supp. 145, 147 (W.D.Pa.1987). *Reimer v. Tien*, 356 Pa.Super. 192, 514 A.2d 566, 568–69 (1986). A false representation is fraudulent if the statement is made knowingly with the intent to deceive or in reckless disregard for the truth or falsity of the matter. *Cashdollar v. Mercy Hospital*, 406 Pa.Super. 606, 595 A.2d 70 (1991).

■ Here, plaintiffs have failed to raise a genuine issue of material fact as to these elements. Plaintiffs concede that defendant retains the right to promote and demote its employees at any time. Although it appears that Rodgers was promoted, there is no evidence to suggest a promise that he would remain manager *for any specific length of time*. Thus, as an at-will employee, Rodgers has no claim for fraud; the defendant reserved the right to employ him as an agent or manager for as long as the company desired. Because plaintiffs have failed to produce clear and convincing evidence of fraudulent intent, we must grant summary judgment in defendant's favor on this claim.

*Breach of contract*

■ Plaintiffs claim that defendant breached a contract to promote Rodgers.

viability of such a cause of action but note only that it would not be barred under the Act. See:

*Vosburg, supra*, 591 A.2d at 1132.

According to the plaintiffs, Rodgers agreed to remain with Prudential in consideration for his employer's promise to promote him. This claim for breach of contract allegedly arose when Prudential told Rodgers that he was never promoted.

In Pennsylvania, "the employment relationship is presumed to be at-will unless the employee can overcome that presumption with evidence of definite and specific terms of employment concerning length of employment or cause for termination." *Engstrom v. John Nuveen & Co., Inc.*, 668 F.Supp. 953, 957 (E.D.Pa.1987). "Although contract terms can be implied, the employment contract itself cannot; either the employee works at-will or has an express employment contract with a term establishing a definite and specific length of employment." *Id.*

While Rodgers may have a claim for reliance damages, he does not have a claim for breach of contract. Plaintiffs have failed to produce sufficient evidence to overcome the presumption of Rodgers' status as an at-will employee. In fact, Rodgers admitted several times in his deposition that (1) he realized Prudential retained the right to promote and demote him at will, and (2) no Prudential management personnel ever promised him that he would be a manager for any specific period of time. Without any evidence to support a contract for a definite and specific length of employment, Rodgers must suffer a summary judgment against him on his breach of contract claim.

*Loss of Consortium.*

■ Finally, Mrs. Rodgers' claim against Prudential for loss of consortium (Count IV) also fails. As a derivative claim, loss of consortium can be recovered by a wife only when the defendant is liable to her spouse. *See, e.g., Murray v. Commercial Union Ins. Co.*, 782 F.2d 432, 437–38 (3d Cir.1986); *Hooten v. Pennsylvania College of Optometry*, 601 F.Supp. 1151, 1155 (1984); *Little v. Jarvis*, 219 Pa.Super. 156, 280 A.2d 617, 620 (1971). Here, the defendant is not liable for either intentional infliction of emotional distress, fraud, or breach of contract. Furthermore, recovery for loss of consortium is not available in a breach of contract claim if the spouse is not a party to the contract. See: *Murray, supra,* 782 F.2d at 437–38. Therefore, we grant summary judgment in favor of defendant on this claim as well.