Dale KESSLER and Sandra Kessler, Plaintiffs,

v.

Dr. David K. MONSOUR, Superintendent, Line Mountain School District (in individual and official capacity), Alexander Menio, Principal, Line Mountain School District (in individual and official capacity), Line Mountain School District and Pennsylvania State Education Association, Defendants.

No. 4:CV–94–0575.

United States District Court, M.D. Pennsylvania.

Sept. 6, 1994.

Robert S. Mirin, Mirin & Jacobson, Harrisburg, PA, for plaintiffs.

Robert G. Hanna, Jr., Marshall, Dennehy, Warner, Coleman and Goggin, Harrisburg, PA, for defendants Monsour, Menio and Line Mountain School Dist.

A. Martin Herring, Herring & Herring, Philadelphia, PA, for defendants Line Mountain Educ. Ass'n and Pennsylvania State Educ. Ass'n.

## MEMORANDUM

McCLURE, District Judge.

## BACKGROUND:

On April 19, 1994, plaintiffs Dale and Sandra Kessler initiated this action by filing a complaint pursuant to 42 U.S.C. §§ 1983, 1985, 1986. Plaintiffs allege the violation of Dale Kessler's civil rights through his suspension from his teaching position at the Line Mountain High School. They also set forth a pendent state claim for the intentional infliction of emotional distress.

Before the court are defendants' motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). Defendants Monsour, Menio, and Line Mountain School District move to dismiss Counts II, III, and IV, as well as plaintiffs' claim for punitive damages. Defendants Line Mountain Education Association and Pennsylvania State Education Association move to dismiss Counts III and IV.

## DISCUSSION:

### I. STANDARD FOR DISMISSAL UNDER RULE 12(b)(6)

A motion to dismiss under Fed. R.Civ.P. 12(b)(6) admits the well pleaded allegations of the complaint, but denies their legal sufficiency. *Hospital Building Co. v. Trustees of the Rex Hospital,* 425 U.S. 738, 740, 96 S.Ct. 1848, 1850, 48 L.Ed.2d 338 (1976). "It is the settled rule that 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Leone v. Aetna Cas. & Sur. Co.,* 599 F.2d 566, 567 (3rd Cir.1979) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). The complaint must be read in a light most favorable to the plaintiff with every doubt resolved in plaintiff's favor. *In re Arthur Treacher's Franchise Litigation,* 92 F.R.D. 398, 422 (E.D.Pa.1981).

### II. STATEMENT OF FACTS

The following are the facts alleged in the complaint, which are accepted as true for purposes of the motions to dismiss. In order to ensure that the facts are construed in plaintiffs' favor, we quote plaintiffs' recitation of the facts, absent the citations to the complaint and with some grammatical changes. *See* Brief in Opposition to Motion to Dismiss of Defendants Monsour, Menio, and Line Mountain School District at 1–5; Brief in Opposition to Motion to Dismiss of Defendants Line Mountain Education Association and Pennsylvania State Education Association at 6.

Dale and Sandra Kessler are husband and wife. Since 1977 Dale Kessler has been employed as the Line Mountain High School art teacher, a tenured professional employee with the Line Mountain School District, and has been employed there since 1974. Sandra Kessler is the parent of Eli Kessler, a fifth grade student in the Line Mountain School District. Sandra Kessler is employed as an elementary art teacher in the Line Mountain School District, a tenured professional employee with the Line Mountain School District since 1980, and has been employed as a teacher since 1977.

Dale and Sandra Kessler, as tenured professional employees of the Line Mountain School District, are subject to the protection of a collective bargaining agreement. The Pennsylvania State Education Association is the recognized collective bargaining association for teachers within the Line Mountain School District. Defendant Line Mountain Education Association is the local union responsible for the representation of teachers of the Line Mountain School District in areas including collective bargaining and the grieving of Line Mountain School decisions. Although neither Dale nor Sandra Kessler is currently a member of either the Pennsylvania State Education Association or the Line Mountain Education Association, they are members of the respective collective bargaining units by virtue of their employment within the Line Mountain School District and as such are entitled to representation by the Union. Defendant David K. Monsour was the superintendent of the Line Mountain School District during the 1993–1994 school year. Defendant Alexander Menio was the principal of the Line Mountain High School during the 1993–1994 school year.

In August or September 1993, Dale Kessler, in his dual capacity as a teacher and parent, and several other parents, appeared before the Line Mountain School District at its regular meeting to express their wish, contrary to the administration's position, that the board sponsor School District participation in the Pentel Art Exhibit, which had selected several children in the District for awards, including Eli Kessler. Contrary to the administration's recommendation, and in spite of the superintendent's public ridicule of Dale Kessler for spending private funds to facilitate student participation in the exhibit, the Line Mountain School Board voted to approve sponsorship for the show.

On or about October 27, 1993, defendant Menio gave Dale Kessler an arbitrary and illegal unsatisfactory professional employee rating signed by defendant Monsour. Neither defendant had scheduled observations nor actually observed Dale Kessler prior to this evaluation. Dale Kessler attempted, but was not allowed, to grieve or appeal the unsatisfactory rating to the school board, although the evaluation form indicates that he can pursue that course of action. Further, the evaluation form was one designed for end of year evaluation, and was therefore improperly used.

On January 14, 1994, several students in Dale Kessler's class were throwing rubber chair stoppers around the classroom, when a stopper thrown in Kessler's direction hit and damaged a student's art project, a large mask, and disrupted the classroom. Dale Kessler responded. Not only was Dale Kessler required to justify his handling of the incident to defendant Menio, he was improperly refused the opportunity to have a representative present, having been threatened with insubordination if he did not discuss the incident immediately.

On January 24, 1994, Dale Kessler was handed a letter by defendant Monsour informing him of his indefinite suspension with pay pending "resolution of and investigation currently being conducted by local and state police which has been brought to our attention." There was no notice or hearing prior to this action. On January 25, 1994, Dale Kessler, *sua sponte,* filed an appeal with the school board, which was never acknowledged by the board. On February 1 and 2, 1994, front page newspaper articles reported that a statement made by defendant District indicated that a teacher had been suspended for an alleged assault on a student and for alleged conduct potentially harmful to the safety of the student.

On February 28, 1994, plaintiffs' attorney was told by School District Solicitor Roger Wiest that no criminal charges were brought against Dale Kessler, there was no further investigation, and he would be reinstated by defendant Monsour at a meeting that day.

On February 28, 1994, Dale Kessler attended a meeting with defendant Monsour and Line Mountain Education Association President Thea Tafner. Dale Kessler was not permitted to have his counsel present. Defendant Monsour insisted on a private meeting. Dale Kessler was presented with a list of four expectations regarding his return to the classroom, with defendant Monsour insisting that Dale Kessler affirm each statement. Only one of the four statements related to the corporal punishment issues which ostensibly existed on January 14, 1994. When Dale Kessler asked to speak to his counsel (present in the adjoining room at the recommendation of defendant Pennsylvania State Education Association's general counsel), Tafner promptly declared the statements "specific enough," endorsed them, and stated that there was "nothing to violate the contract." Defendant Monsour subsequently refused the request to review the document and abruptly ended the meeting.

As a consequence, Dale and Sandra Kessler purposely have been excluded from participation in District-wide art curriculum revision efforts, although they purchased materials for the 1993 Curriculum Frameworks project out of their private funds and have the most experience teaching art in the District.

Despite numerous communications from Dale Kessler requesting a meeting with defendant Monsour to clarify the statements and with Line Mountain School Board to appeal the suspension decision and to reinstate him, there has been no response, and

he remains suspended with pay. Dale Kessler was advised of his dismissal, and a hearing scheduled for April 19, 1994, by letter dated April 5, 1994, from the President of the School Board, providing inadequate notice, inadequate preparation time, and citing new grounds for dismissal.

To Dale Kessler's knowledge, no student was reprimanded or disciplined as a result of the incident and improper behavior in Dale Kessler's classroom on January 14, 1994. On several occasions, including the January 14, 1994, incident, students told Dale Kessler that he would not be supported by the administration if he accused the students of misbehavior.

As a result of defendants' retaliation against Dale Kessler's free speech activities, Dale Kessler remains harassed, targeted for dismissal, and in professional limbo. He belatedly learned that he was purportedly suspended pending an investigation by local and state police, and has not been permitted to return to the classroom since January 14, 1994, even though he was never contacted by state or local police, no charges were brought, and according to the District solicitor, there is no pending investigation. Moreover, despite its obligation to Dale Kessler and despite repeated requests from counsel for Dale Kessler, defendant Pennsylvania State Education Association has disavowed the responsibility for representing him, has declined to proceed to represent him, and has conspired to affect adversely his tenured employment.

## III. MOTION TO DISMISS FILED BY DEFENDANTS MONSOUR, MENIO, AND LINE MOUNTAIN SCHOOL DISTRICT

As noted, defendants Monsour, Menio, and Line Mountain School District move for dismissal of Counts II, III, and IV, and plaintiffs' claim for punitive damages. Each of these will be discussed in turn.

### A. Count II

Count II of the complaint purports to state a claim on the part of Dale Kessler against defendants Monsour, Menio, Line Mountain School District, and Line Mountain Education Association for violations of 42 U.S.C. §§ 1985, 1986. Complaint at 13.

### i. Section 1985

The particular subsection of § 1985 upon which Dale Kessler relies in Count II of the complaint is not stated. However, § 1985(1) relates to a conspiracy to prevent an officer of the United States from performing official duties or taking office; § 1985(2) relates to conspiracies to obstruct justice. Neither of these subsections has any conceivable application to the facts alleged by plaintiffs, and they do not argue that they have stated a claim under either of these subsections. *See* Brief in Opposition to Motion to Dismiss of Defendants Monsour, Menio, and Line Mountain School District at 6.

■ The only way § 1985 might apply, then, is under the only remaining subsection, § 1985(3). In order to recover under § 1985(3), a plaintiff must allege and prove: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *United Brotherhood of Carpenters and Joiners of America v. Scott*, 463 U.S. 825, 829–830, 103 S.Ct. 3352, 3356–57, 77 L.Ed.2d 1049 (1983) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102–103, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971)). "[T]he conspiracy not only must have as its purpose the deprivation of 'equal protection of the laws,' but also must be motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Id.* (quoting *Griffin*, 403 U.S. at 102, 91 S.Ct. at 1798).

■ It should be noted, however, that the Supreme Court limited its holding in *Griffin* by declining to reach the question of whether § 1985(3) applies to a conspiracy not motivated by racial animus. 403 U.S. at 102, 91 S.Ct. at 1798. In *Scott*, the Court questioned whether § 1985(3) can be construed to reach

a conspiracy formed to further a discriminatory motivation other than race, but limited its decision to holding that § 1985(3) does not reach "conspiracies motivated by bias towards others on account of their *economic* views, status, or activities." 463 U.S. at 837, 103 S.Ct. at 3360. The Court noted that the primary purpose of § 1985(3) is to combat "the violent and other efforts of the [Ku Klux] Klan and its allies to resist and to frustrate the intended [e]ffects of the Thirteenth, Fourteenth, and Fifteenth Amendments." *Id.* Thus, labor organizations were not liable under § 1985(3) for conduct directed toward non-union laborers and their employer. *Scott*, 463 U.S. at 838–839, 103 S.Ct. at 3361.

More recently, the Supreme Court examined a § 1985(3) claim in the context of an alleged conspiracy to prevent access to abortion clinics. *Bray v. Alexandria Women's Health Clinic*, — U.S. —, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993). The Court reiterated that a § 1985(3) claim may be brought for a conspiracy motivated by racial "or perhaps otherwise class-based, invidiously discriminatory animus ..." — U.S. at —, 113 S.Ct. at 756, 122 L.Ed.2d at 45 (quoting *Griffin*, 403 U.S. at 102, 91 S.Ct. at 1798). While again declining to define precisely the contours of the definition of "class" for purposes of § 1985(3), the Court stated:

To begin with, we reject the apparent conclusion of the District Court (which respondents make no effort to defend) that opposition to abortion constitutes discrimination against the "class" of "women seeking abortion." Whatever may be the precise meaning of a 'class' for purposes of *Griffin*'s speculative extension of § 1985(3) beyond race, the term unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors. Otherwise, innumerable tort plaintiffs would be able to assert causes of action under § 1985(3) by simply defining the aggrieved class as those seeking to engage in the activity the defendant has interfered with. This definitional ploy would convert the statute into the "general federal tort law" it was the very purpose of the animus requirement to avoid.... As

Justice Blackmun has cogently put it, the class "cannot be defined simply as the group of victims of the tortious action." *Carpenters, supra*, at 850 [103 S.Ct. at 3367], (Blackmun, J., dissenting)....

*Bray*, — U.S. at —, 113 S.Ct. at 759, 122 L.Ed.2d at 46.

In this case, it is not necessary to define precisely the term "class" for purposes of "class-based invidiously discriminatory animus" for purposes of § 1985(3). The foregoing provision quoted from *Bray* makes clear that plaintiffs are not part of a class which is protected by § 1985(3). "Plaintiffs assert that they are a class of citizen teachers who have been deprived of their rights under the First and Fourteenth Amendments by Defendant School District, Defendant Menio, and Defendant Monsour." Plaintiffs' Brief in Opposition to Motion to Dismiss of Defendants Monsour, Menio, and Line Mountain School District at 10. This assertion rather obviously falls within the category of cases described in *Bray* in which the "class" is defined as the victims of the alleged deprivation.

We hold, then, that the "class of citizen teachers who have been deprived of their rights under the First and Fourteenth Amendments" is not a class protected by § 1985(3), and plaintiffs' claims thereunder will be dismissed.

### *ii. Section 1986*

Section 1986 is a companion to § 1985(3) and provides the claimant with a cause of action against any person who, knowing that a violation of § 1985 is about to be committed and possessing power to prevent its occurrence, fails to take action to frustrate its execution. Because transgressions of § 1986 by definition depend on a preexisting violation of § 1985, if the claimant does not set forth a cause of action under the latter, its claim under the former necessarily must fail also.

*Rogin v. Bensalem Township*, 616 F.2d 680, 696 (3d Cir.1980) (footnotes omitted), *cert. denied*, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981). *See also Clark v. Cla-*

*baugh,* 20 F.3d 1290, 1295 (3d Cir.1994) (to same effect and quoting *Rogin* ).

Having determined above that plaintiffs' claim under § 1985(3) fails, we hold that plaintiffs' claim under § 1986 fails as well. Count II of plaintiffs' complaint will be dismissed.

### B. Count III

Count III of the complaint alleges a cause of action in favor of Dale Kessler and Sandra Kessler pursuant to § 1986. As discussed above, plaintiffs are not within a class protected under § 1985(3), so that any claim under § 1986 fails as well. Count III of the complaint will be dismissed.

### C. Count IV

Count IV of plaintiffs' complaint alleges a cause of action on the part of Dale Kessler and Sandra Kessler against all defendants for intentional infliction of emotional distress, a state law claim asserted under the court's supplemental jurisdiction. Defendants Monsour, Menio, and Line Mountain School District argue that: (1) plaintiffs' sole remedy is through the Pennsylvania Workers' Compensation Act, 77 Pa.Stat.Ann. §§ 1 et seq.; (2) the defendants are immune from liability under the Pennsylvania governmental immunity statute, 42 Pa.Cons.Stat.Ann. § 8541; and (3) the conduct alleged does not rise to the level of "outrageous" necessary to support a claim for the intentional infliction of emotional distress.

#### i. Pennsylvania Workers' Compensation Act

Defendants point out that plaintiffs' claims for damages are barred by plaintiffs' eligibility for Workers' Compensation benefits. 77 Pa.Stat.Ann. § 481(a). Under the Workers' Compensation Act, an employer is liable for compensation for personal injury to an employee which occurs "in the course of his employment," with certain exceptions. 77 Pa.Stat.Ann. § 431. Plaintiffs did not respond to this argument in their brief.

██ Generally, a claim against an employer for intentional infliction of emotional distress is barred by the Workers' Compen-

sation Act. *Rodgers v. Prudential Insurance Co. of America,* 803 F.Supp. 1024, 1026–1027 (M.D.Pa.1992), *aff'd,* 998 F.2d 1004 (3d Cir.1993) (table). The exceptions to this bar to recovery are very limited. *Rodgers,* 803 F.Supp. at 1027.

We have held previously that such claims when based upon sexual harassment are not barred by the Workers' Compensation Act because sexual harassment "is personal in nature and is not part of any legitimate employer/employee relationship." *Garvey v. Dickinson College,* 761 F.Supp. 1175, 1191–1192 (M.D.Pa.1991). The Supreme Court of Pennsylvania carved a narrow exception when it permitted an action based upon an employer's fraudulent misrepresentation of employee medical test results. *Rodgers,* 803 F.Supp. at 1029 (citing *Martin v. Lancaster Battery Co., Inc.,* 530 Pa. 11, 606 A.2d 444 (1992).

No exception, however, has been made for an employee who alleges retaliation based upon the exercise of free speech rights directly related to his or her employment.

#### ii. Immunity

██ Defendants Monsour, Menio, and Line Mountain School District next argue that plaintiffs' claim for intentional infliction of emotional distress should be dismissed based upon governmental immunity. The relevant statute provides:

> Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

42 Pa.Cons.Stat.Ann. § 8541. The exceptions to § 8541 are set forth in 42 Pa.Cons. Stat.Ann. § 8542. An exception will apply when the damages would be recoverable at common law but for the applicability of governmental or official immunity, and the injury was caused by the negligent acts of a local agency or employee acting within the scope of employment in one of eight categories. Sec. 8542(a). *There is no exception to governmental immunity when the alleged negligent acts constitute a crime, actual fraud,*

actual malice or willful misconduct. Sec. 8542(a)(2). A local agency is immune from liability for state-law intentional torts. *Amnesty America v. County of Allegheny*, 822 F.Supp. 297, 301 (W.D.Pa.1993).

 Plaintiffs cite two cases which they contend stand for the proposition that governmental immunity does not apply to intentional torts: *Weinstein v. Bullick*, 827 F.Supp. 1193 (E.D.Pa.1993), and *Brown v. Smythe*, 780 F.Supp. 274 (E.D.Pa.1991) (miscited as *Brown v. Smith* in plaintiffs' brief). Without wishing to elaborate upon the difference between governmental and official immunity, the court refers plaintiffs to 42 Pa. Cons.Stat.Ann. § 8550, which provides that, when the complained-of conduct constitutes a crime, actual fraud, actual malice or willful misconduct, statutes relating to official immunity do not apply. Both *Weinstein* and *Brown* are straightforward applications of § 8550. *See Weinstein*, 827 F.Supp. at 1206 (individual public employee not immune under official immunity statute, 42 Pa.Cons. Stat.Ann. § 8546); *Brown*, 780 F.Supp. at 282–283 (individual members of a governing body of a state political subdivision are not immune when there is a genuine issue of material fact as to whether conduct constituted actual malice or willful misconduct). Neither of these cases stands for the proposition that the state's political subdivision itself is not immune; that is, governmental immunity applies even when official immunity may not apply.

Defendant Line Mountain School District is immune from suit for intentional infliction of emotional distress pursuant to §§ 8541, 8542.

### iii. "Outrageous" Conduct

 Finally, defendants Monsour, Menio, and Line Mountain School District argue that the conduct alleged in the complaint does not rise to the level of "outrageous" necessary to establish a claim for intentional infliction of emotional distress. Again, plaintiffs did not respond to this argument in their brief, but the brief filed in opposition to the motion to dismiss of defendants Line Mountain Education Association and Pennsylvania State Education Association does address the

issue. *See* Brief in Opposition to Motion of Defendants Line Mountain Education Association and Pennsylvania State Education Association at 14–17.

Although never recognized by the Supreme Court of Pennsylvania, a number of courts have ruled that a cause of action for the intentional infliction of emotional distress would be recognized by that Court. *See Weinstein*, 827 F.Supp. at 1203 (reviewing cases, including cases decided by Court of Appeals for the Third Circuit). The elements of a cause of action for intentional infliction of emotional distress as set forth in Restatement (2d) of Torts § 46 are: (1) extreme and outrageous conduct; (2) intentional or reckless conduct; (3) the conduct must cause emotional distress; and (4) the distress must be severe. *Weinstein*, 827 F.Supp. at 1203 (citations omitted).

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

Comment *d* to § 46. Pennsylvania courts have been unwilling to find that conduct rises to this level and have been cautious in permitting recovery for this tort. *Weinstein*, 827 F.Supp. at 1204. *See also Kazatsky v. King David Memorial Park*, 515 Pa. 183, 527 A.2d 988, 991–992 ("The availability of recovery under section 46 is highly circumscribed"; also quoting Comment *d* to § 46).

The alleged conduct of which plaintiffs complain may be summarized as follows: defendant Monsour ridiculed Dale Kessler's desire to spend School District funds to send students to an art competition; Dale Kessler was given an unsatisfactory job performance review on the wrong form and with inadequate observation; Dale Kessler was suspended when there were allegations of a criminal investigation by state and local police; Dale Kessler was suspended for events surrounding physical contact with a student; no hearing on the latter suspension was held; the defendant unions did not support Dale Kessler in his grievances and complaints; and the actions taken were in retaliation for

Dale Kessler's exercise of his free speech rights.

This conduct, whether the events are viewed singly or in combination, does not rise to the level of extreme and outrageous conduct contemplated by § 46. This applies both in any general community or the "community of professional educators" suggested by plaintiffs. In making the latter suggestion, plaintiffs rely heavily upon *Kazatsky, supra,* in which the Supreme Court of Pennsylvania discussed at length the element of outrageous conduct. 527 A.2d at 991–995. However, this discussion was in the context of a requirement of expert medical evidence; the Court held that competent medical evidence was necessary to establish a claim of intentional infliction of emotional distress because of the subjective nature of the outrageousness element. 527 A.2d at 995. Nothing in *Kazatsky* suggests that a court is to attempt to "objectify" this element of the cause of action. Still, even if such a community were to be the basis for the court's review, nothing in the conduct of defendants rises to the level of outrageousness required for this cause of action.

Plaintiffs have failed to allege conduct which may be considered "extreme and outrageous" for purposes of a cause of action under § 46.

### *iv. Conclusion*

For all of these reasons, Count IV of the complaint will be dismissed.

### *D. Punitive Damages*

 Defendants Monsour, Menio, and Line Mountain School District next argue that they are immune from claims for punitive damages under § 1983. Plaintiffs have not responded to this aspect of defendants' motion. The law in this area is clear.

*City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), precludes an award of punitive damages against municipal defendant ... on 42 U.S.C. § 1983 claims. Individual defendants sued in their official or representative capacity are likewise immune to punitive damages. *See Brandon v. Holt,*

469 U.S. 464, 470 n. 16, 105 S.Ct. [873], 877 [n. 16], 83 L.Ed.2d 878 (1985).... Therefore, only the individual defendants sued in their individual capacity are potentially liable for punitive damages to plaintiff....

*Harris v. Board of Public Utilities of the City of Kansas City,* 757 F.Supp. 1185, 1195 (D.Kan.1991). *See also Keenan v. City of Philadelphia,* 983 F.2d 459, 477 (3d Cir.1992) (Higginbotham, J., dissenting in part; courts should not consider municipality's indemnification of individual defendants when considering evidence of net worth of defendants upon whom punitive damages have been imposed).

The claims against defendants Monsour and Menio in their official capacity for punitive damages will be dismissed. The claims for punitive damages against defendant Line Mountain School District will be dismissed.

### IV. MOTION TO DISMISS FILED BY DEFENDANTS LINE MOUNTAIN EDUCATION ASSOCIATION AND PENNSYLVANIA STATE EDUCATION ASSOCIATION

Defendants Line Mountain Education Association and Pennsylvania State Education Association move to dismiss Counts III and IV of the complaint. For the reasons set forth above, Counts III and Count IV will be dismissed as to these defendants.

Also, while defendants Line Mountain Education Association and Pennsylvania State Education Association do not move specifically for dismissal of Count II of the complaint, they argue in their brief that no claim under § 1985(3) has been stated. *See* Brief in Support of Motion to Dismiss of Defendants Line Mountain Education Association and Pennsylvania State Education Association at 4. As noted, Count II fails to state a claim upon which relief may be granted because plaintiffs are not members of a class protected by § 1985(3); this rationale applies to all defendants named in Count II, and Count II will be dismissed in its entirety.

### V. CONCLUSION

The result of these dismissals is that Counts II, III, and IV of the complaint are

dismissed in their entirety as to all defendants, and the remaining claims are those set forth in Count I of the complaint. All claims against defendant Line Mountain Education Association and Pennsylvania State Education Association, i.e. Counts II, III, and IV, will be dismissed. Also, plaintiffs' claims for punitive damages will be dismissed save those against defendants Monsour and Menio, in their individual capacity, for conduct related to Count I of the complaint.

An appropriate order shall issue.