Frances **PIERCE** and Jude C. Pierce,

v.

**MONTGOMERY COUNTY OPPORTUNITY BOARD, INC., Julio Algarin, Gregory A. Rogers, Wayne C. Luker, Allan Kinloch, Mattie Dixon, Aaron Schell, Harvey Portner, Dennis Darling and Joel Weisberg.**

**Civ. A. No. 94–4146.**

United States District Court,
E.D. Pennsylvania.

March 31, 1995.

---

Steven R. Sosnov, Amy W. Sosnov, Sosnov and Sosnov, Norristown, PA, for plaintiffs.

Joshua P. Rubinsky, Philadelphia, PA, George H. Knoell, III, Kane, Pugh, Knoell & Driscoll, Norristown, PA, for Montgomery County Opportunity Bd., Inc.

George H. Knoell, III, Kane, Pugh, Knoell & Driscoll, Norristown, PA, for Harvey Portner.

Sue Ann Unger, Office of Atty. Gen., Philadelphia, PA, for Dennis Darling, Joel Weisberg.

1. The Amended Complaint inconsistently refers to this Defendant as both the Montgomery County Opportunity Board, Inc. and the Opportunity Board of Montgomery County, Inc. We refer to this Defendant as the Montgomery County Opportunity Board, Inc. (MCOB), as does the caption of the Amended Complaint.

## MEMORANDUM

JOYNER, District Judge.

This litigation arises out of the termination of Plaintiff Frances Pierce from her position as Executive Director of the Montgomery County Opportunity Board, Inc. (MCOB).[1] Defendants are the MCOB, several of its directors (MCOB Defendants) as well as two officials of Pennsylvania's Department of Community Affairs (State Defendants). All Defendants have moved to dismiss the Amended Complaint, and MCOB Defendants seek in the alternative a more specific complaint.

In Plaintiffs' Opposition to this Motion to Dismiss, or in the Alternative for a More Specific Complaint, Frances Pierce alleges that her termination was a breach of her employment contract (Count One), as well as a wrongful discharge (Count Three). In addition, she alleges a civil conspiracy, violation of her First Amendment rights and malicious interference with her contractual rights (Count Three). Pierce's husband, Jude Pierce also brings two causes of action; one under a third party beneficiary theory for benefits under Pierce's medical insurance (Count Two) and a second for loss of his wife's consortium (Count Four).

This itemization of Plaintiffs' causes of action is derived from the Brief in Opposition because even after many careful readings of the Amended Complaint, especially Count Three, this Court is not entirely sure which causes of action Plaintiffs pursue. Accordingly, we have looked to the representations in the Brief to clarify their intent.

### FACTUAL BACKGROUND

Taking the facts alleged in the Amended Complaint as true, Pierce is and has been a Republican Committeewoman at all material times and votes for Republican political candidates. In August, 1990, Pierce was made the Acting Executive Director of MCOB. At some point after August, 1990, State Defendants, presumably Democrats, resolved to have Pierce removed from the head of

MCOB, allegedly for political reasons. In June, 1991, Pierce was appointed MCOB's Executive Director for a five-year term at a certain salary and with certain benefits.

In November, 1991,[2] State Defendants arranged to terminate MCOB's federal funding, allegedly because Pierce's active Republicanism created a prohibited conflict of interest under Federal regulations.[3] In May, 1992, MCOB Defendant Harvey Portner was appointed to the MCOB Board and at some point became its President. He apparently asked Pierce to resign as Executive Director, and when she refused, embarked upon a campaign to impugn Pierce's reputation. In August, 1992, the other MCOB Defendants (including at least one Republican) joined in a conspiracy with Portner and the State Defendants to remove Pierce from MCOB on account of her Republicanism.

In December, 1992, Portner resigned as President of the Board so as to "create an aura of non-involvement," but nonetheless, "maintained effective control over the Opportunity Board." *Id.* at ¶¶ 39, 48. He was replaced by MCOB Defendant Aaron Schell, a Republican.

On December 16, 1992, Schell informed Pierce that the MCOB Board was to meet with the Department of Community Affairs, told Pierce that he did not know the purpose of the meeting, and then did not attend the meeting himself. At this meeting, State Defendants informed the Board that they were there to close down MCOB. According to the Amended Complaint, the "purpose of the attendance of defendants Darling and Weis-

berg was to give a basis for the actions which were planned sub rosa to remove Frances Pierce from her job as Executive Director." *Id.* at ¶ 41. One month later, the MCOB Board voted to remove Pierce as Executive Director.

## STANDARD OF REVIEW

■ In considering a 12(b)(6) motion, a court must primarily consider the allegations contained in the complaint, although matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may also be taken into account. *Chester County Intermediate Unit v. Pennsylvania Blue Shield,* 896 F.2d 808, 812 (3d Cir.1990).

■ In ruling upon such a motion, the Court must accept as true all of the allegations in the pleadings and must give the plaintiff the benefit of every favorable inference that can be drawn from those allegations. *Schrob v. Catterson,* 948 F.2d 1402, 1405 (3d Cir.1991); *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir.1990). A complaint is properly dismissed only if it appears certain that the plaintiff cannot prove any set of facts in support of its claim which would entitle it to relief. *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988).

## LEGAL ANALYSIS

### I. COUNT ONE

Count One of the Amended Complaint claims a breach of Pierce's employment contract by MCOB. MCOB Defendants seek to

---

**2.** This may have actually occurred in November, 1990. The chronology in the Amended Complaint, as well as public records of the Department of Community Services indicate that the initial decision to terminate MCOB's funding was made in November, 1990. *In re Montgomery Opportunity Board,* PA Dept. of Comm. Servs., *Final Order* at 1 (Aug. 7, 1991).

**3.** State Defendants attached documents within the public record to their Brief. These public documents indicate that the initial decision to terminate MCOB's funding was based on three grounds; one of which was Pierce's alleged conflict of interest. However, the documents also indicate that by the time the actual decision to terminate funding was made, only one ground was relied upon; that MCOB's Board was not

properly constituted because one-third of it had not been democratically elected from the community. *See* 42 U.S.C. § 9904.

With her Brief in Opposition, Pierce attached several documents, including her own affidavit and another's deposition transcript. We did not rely on these attachments in deciding this Motion because they, unlike State Defendants' documents, are not matters of public record, and are outside the pleadings. Rule 12(b)(6) is clear that if matters outside the pleadings are used, the Motion is converted into one for summary judgment. *Chester County Inter. Unit. v. Pennsylvania Blue Shield,* 896 F.2d 808, 812 (3d Cir.1990). We decline to so convert this Motion, and so limit our review to the pleadings and matters of public record.

dismiss this Count on the ground that a copy of the contract is not attached to the Amended Complaint. They assert, citing a Pennsylvania state case, that the contract must be attached, and that its existence, breach and damages must all be specifically pleaded. MCOB Brief at 7.

Pierce argues that she has pleaded the legal effect of the contract, which is all that the Federal Rules' notice pleading structure requires. Moreover, Pierce indicates that a copy of the contract was attached to the original complaint filed in state court before the action was removed to this Court so that MCOB is aware of the contact.

■ We find that Federal Rule of Civil Procedure 8(a) permits a plaintiff to assert the existence of an express, written contract either by setting it forth verbatim in the complaint, or the plaintiff may "attach a copy as an exhibit, or plead it according to its legal effect." 5 Charles A. Wright, Arthur R. Miller, *Federal Practice and Procedure,* § 1235 at 272, 273 (1990); *Goshen Veneer Co. v. G. & A. Aircraft, Inc.,* 3 F.R.D. 344, 345 (E.D.Pa.1944); *Stephens v. American Home Assurance Co.,* 811 F.Supp. 937, 958 (S.D.N.Y.1993).

■ Accordingly, so long as Pierce has pleaded all the necessary elements of a breach of contract action, Count One can stand. To maintain the cause of action, the complaint must allege (1) the existence of a valid and binding contract, (2) that Plaintiff has complied with the contract and performed her own obligations under it, (3) fulfillment with all conditions precedent, (4) a breach of the contract, and (5) damages to plaintiff. *Federal Practice and Procedure,* § 1235 at 269–71.

■ Here, Pierce alleges the existence of a written contract, as well as its terms. Amended Complaint ¶ 16. The Amended Complaint also alleges the existence of written personnel policies concerning termination procedures. *Id.* at ¶¶ 18, 19. Pierce specifically pleads that she has complied with all conditions precedent and alleges damages in the amount of lost wages and loss of insurance. *Id.* at ¶ 20.

Pierce does not specifically plead that the contract was breached or that she complied with all its terms, but we find that those two elements can be reasonably inferred from the Amended Complaint. Paragraph 17 alleges that "during the term of the employment contract, [defendant] notified Frances Pierce that 'we no longer desired your services as the Executive Director', the position contemplated by the written contract, and Frances Pierce was thereafter effectively removed from her position." Although the word "breach" is not used in this sentence, it is evident that it is intended to demonstrate a breach. Likewise, Paragraph 20's allegation that Plaintiff complied with all conditions precedent to the contract can also be seen to allege that she was in compliance with the contract and performed her own obligations under it.

Accordingly, we find that Plaintiff has adequately pleaded breach of an employment contract in Count One and Deny MCOB Defendants' Motion to Dismiss it for failure to state a claim upon which relief can be granted.

## II. COUNT TWO

Count Two asserts a third-party beneficiary cause of action by Jude Pierce against MCOB only. The Amended Complaint baldly alleges, "Jude C. Pierce, as husband of Frances Pierce and residing with her, is a third-party beneficiary of the said employment contract as to health care coverage which was at all times during the course of his wife's employment applicable to him." Amended Complaint ¶ 22.

MCOB Defendants seek to dismiss this Count on the basis that the facts behind any third-party beneficiary status are omitted, and therefore, the Count fails to state a claim for which relief can be granted. They cite *Rex Craft Associates v. Small Business Administration,* 716 F.Supp. 166 (M.D.Pa.1989) for the substantive law concerning the creation of third-party beneficiary status in Pennsylvania.

■ Federal Rule 8(a)(2) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief."

Notice pleading is intended to give fair notice to the opposing party so that they may properly respond to and/or defend the claim. Fed.R.Civ.P. 8(a)(2); *Federal Practice & Procedure*, § 1218 at 185.

■ In neither the Amended Complaint or the Brief in Opposition does Jude Pierce make any allegations to support his assertion that he is a third-party beneficiary to his wife's employment contract. The Amended Complaint does not provide the terms of the employment contract in which Jude Pierce allegedly has an interest, what that interest is, how he obtained it, or any other facts relevant to show third-party beneficiary status. MCOB, therefore, has no basis on which to deny or admit the allegations in Count Two.

Although we could dismiss this Count with prejudice, we find that under the liberal approach to pleading in the Federal Rules, justice would be better served by permitting Jude Pierce the opportunity to replead this Count and provide the missing information, if possible. Accordingly, we GRANT LEAVE to AMEND Count Two in accordance with this Memorandum.

## III. COUNT THREE

### A. Wrongful Discharge

Paragraph 54 asserts a claim for wrongful discharge against MCOB only, as an alternative to Pierce's breach of contract claim in Count One. Brief in Opp. at 4. MCOB Defendants apparently did not realize that one of the claims within Count Three was for wrongful discharge, because they made no argument with respect to it in their Motion to Dismiss. Neither, however, did MCOB Defendants respond after Pierce clearly raised this cause of action in her Brief in Opposition. Nonetheless, because MCOB Defendants seek to dismiss the entire complaint, we will examine the sufficiency of Pierce's wrongful discharge claim.

■ In Pennsylvania, an at-will employee can be discharged for any reason or no reason at all. *Smith v. Calgon Carbon Corp.*, 917 F.2d 1338, 1341 (3d Cir.1990) (cit-

ing *Henry v. Pittsburg & L.E.R. Co.*, 139 Pa. 289, 21 A. 157 (1891); *Clay v. Advanced Computer Applications*, 522 Pa. 86, 559 A.2d 917 (1989)), *cert. denied*, 499 U.S. 966, 111 S.Ct. 1597, 113 L.Ed.2d 660 (1991). The exception to this rule is the public policy exception. This provides that when there is no plausible and legitimate reason for a termination, and a clear mandate of public policy is violated by the termination, even an at-will employee has a claim for wrongful discharge. *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974) (stating possible cause of action in dicta). Pennsylvania does not, however, permit a wrongful discharge claim if statutory relief is available to the plaintiff. *Darlington v. General Elec.*, 350 Pa.Super. 183, 504 A.2d 306 (1986).

■ Here, Pierce alleges that "The Opportunity Board of Montgomery County, Inc. could not discharge an employee for utilizing the right of freedom of speech in the employee's off hours, such discharge as here complained of, being a violation of the public policy of the Commonwealth of Pennsylvania." Amended Complaint ¶ 54. Elsewhere in the Amended Complaint, Pierce alleges that she was terminated solely on account of her participation in Republican party politics. *Id.* at ¶¶ 25, 27–28. As the Third Circuit has held, "an important public policy is in fact implicated wherever the power to hire and fire is utilized to dictate the terms of employee political activities." *Novosel v. Nationwide Ins. Co.*, 721 F.2d 894, 900 (3d Cir. 1983); *Smith*, 917 F.2d at 1344 (probably no clear public policy unless "a legislative or constitutional endorsement"). Pierce alleges that she was terminated for engaging in protected First Amendment activities. We find that this states a claim for wrongful discharge, for which, if the allegations are proved, relief can be granted. Accordingly, we DENY the Motion to dismiss this aspect of Count Three.

### B. State Claims Sounding in Trespass

According to Pierce's Brief in Opposition, Count Three asserts several state law claims sounding in trespass. Brief in Opp. at 14.[4]

4. The Brief actually reads: "Causes of Action 1 and 2 are contractual in nature only against the

972

The Brief in Opposition identifies those claims as civil conspiracy and malicious interference with contractual rights.

■ As a preliminary matter, State Defendants seek to dismiss all state claims against them on the basis that they are protected by sovereign immunity. The Pennsylvania General Assembly has recently "reaffirmed by statute the concept of immunity for the Commonwealth and its employees." *Shoop v. Dauphin County,* 766 F.Supp. 1327, 1333 (M.D.Pa.1991). Under 1 Pa.Cons.Stat. Ann. § 2310 (Supp.1994), "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign and official immunity." This language has been held to immunize State employees acting within the scope of their duties from even their intentional torts. *Shoop,* 766 F.Supp. at 1334; *LaFrankie v. Miklich,* 152 Pa.Commw. 163, 170, 618 A.2d 1145, 1149 (1992) ("Commonwealth employee is protected by sovereign immunity from the imposition of liability for intentional tort claims").

■ In response to State Defendants' immunity argument, Pierce simply states, "Plaintiffs assert that [State Defendants] were acting outside the scope of their offices in participating in a scheme to have her removed from her job. They were not acting within the scope of their duties, it is alleged, and such question of fact is at the basis of the sovereign immunity argument advance [sic] on page 17 of Darling and Weisberg's Memorandum." Brief in Opp. at 8. Pierce suffers under two misapprehensions on this point. First, whether a question of fact exists is irrelevant to this Rule 12(b)(6) motion to dismiss. Second, the Amended Complaint at no time alleges that State Defendants ever acted outside the scope of their duties. In fact, almost every time the State Defendants are mentioned in the Amended Complaint, there is either a specific averment that they were acting within the scope of their duties or a specific description of them performing a State function. Amended Complaint ¶¶ 27, 30–32, 41, 52.

Taking the allegations in the Amended Complaint as true, we find that Pierce has pleaded facts such that State Defendants are entitled to sovereign immunity. Accordingly, all state law claims against the State Defendants are hereby DISMISSED.

■ As a second preliminary matter, MCOB Defendants seek to dismiss these claims on the ground that they are precluded under the exclusivity provisions of Pennsylvania's Workmen's Compensation Act, 77 Pa. Stat.Ann. §§ 1–621 (1992) (Worker's Compensation).

MCOB Defendants argue that "the exclusivity provisions broadly hold[ ] that workers compensation bars an employee's recovery for intentional torts arising out of the employment context." MCOB Brief at 12–13. They cite cases addressing suits for intentional infliction of emotional distress to support this claim. *Rodgers v. Prudential Ins. Co.,* 803 F.Supp. 1024 (M.D.Pa.1992), *aff'd,* 998 F.2d 1004 (3d Cir.1993); *Papa v. Franklin Mint Corp.,* 400 Pa.Super. 358, 583 A.2d 826 (1990); *Gonzalez v. CNA Ins. Co.,* 717 F.Supp. 1087 (E.D.Pa.1989).

Pierce argues that her claims are not barred by Worker's Compensation because she seeks damages for loss of income, costs of seeking new work, damages to her reputation from the dismissal, and post-employment emotional distress, all of which were incurred after her employment relationship with MCOB terminated. She cites other states' cases for the proposition that suits for post-employment damages are not pre-empted by worker's compensation. Brief in Opp. at 10 (citing *Flanigan v. Prudential Fed. S & L Ass'n,* 221 Mont. 419, 720 P.2d 257 (1986); *Ortiz v. Bank of America,* 824 F.2d 692 (9th Cir.1987); *Cagle v. Burns & Roe, Inc.,* 106 Wash.2d 911, 726 P.2d 434 (1986)). This argument does not help her, though, because whether her claim should be dismissed does not depend on the relief she requests, but on the cause of action she asserts.

The purpose of Pennsylvania's Worker's Compensation program is to give workers a

Board. Causes of Action 2 and 4 sound in trespass and include both state and federal bases." Brief in Opp. at 14. We assume that the Brief should actually read, "Causes of Action 3 and 4 sound in trespass and include both state and federal bases."

degree of certainty that they can recover for injuries arising in the course of employment, while at the same time, barring civil suits against the employer outside the compensation statute. 77 Pa.Stat.Ann. §§ 411, 481(a) (1992). The statute seems to clearly contemplate recovery by employees for *physical* injury only. The section that defines "injury" states, "[t]he terms 'injury' and 'personal injury,' as used in this act, shall be construed to mean an injury to an employee, regardless of his previous *physical condition,* arising in the course of his employment and related thereto, and *such disease or infection* as naturally results from the injury . . . ." *Id.* at § 411. This section refers to physical injuries, disabilities, and death, no fewer than five more times. *Id.*

At least one treatise on wrongful discharge has written, "[a]ctions for non-physical injury based on torts such as invasion of privacy, fraud, and defamation are not barred [by worker's compensation] because 'these torts would not come within the basic coverage formula.'" William J. Holloway & Michael J. Leech, *Employment Termination: Rights & Remedies,* 148 (1985) (citations omitted).

MCOB Defendants argue that Pierce's trespass claims are barred by Worker's Compensation, but only cite cases addressing claims of intentional infliction of emotional distress. Several cases in our court have held that emotional distress claims are barred by Worker's Compensation. *See Yerger v. Landis Mfg. Sys.,* No. 88–7694, 1989 Westlaw 66443 at *8 (E.D.Pa. June 16, 1989) ("Plaintiff's common law claim for *emotional distress* based on the allegations that defendants wrongfully discharged him to prevent further liability for his disability, however, is preempted by ERISA and the Pennsylvania Workman's Compensation Act") (emphasis added). We find that these cases do not help MCOB Defendants' arguments because emotional distress claims have a physical injury component. Restatement (Second) of Torts § 46 at 78 (1965); *Williams v. Guzzardi,* 875 F.2d 46, 50 (3d Cir.1989) (sleeplessness, depression, or some other evidence that the plaintiff suffered "*severe* emotional distress") (emphasis added).

Neither side cites any cases holding that claims such as interference with contract or civil conspiracy, even when arising from the employment relation, are included within the scope of Worker's Compensation. After thorough research, this Court has failed to find a single case, with one possible exception, that barred claims even remotely similar to Pierce's claims under any state's Worker's Compensation statute.

The above noted possible exception is *Rodgers.* There, plaintiff was allegedly wrongfully discharged from his job, and sued his former employer for both intentional infliction of emotional distress and fraud. The Middle District of Pennsylvania held that these claims were barred by the exclusivity provisions of the Worker's Compensation laws. 803 F.Supp. at 1030. We find *Rodgers* inapplicable to this case for a number of reasons. First, it appears that the fraud alleged took place while plaintiff was still employed, therefore, it clearly arose in the course of his employment. *Id.* at 1025–26. Second, on the merits, the Court found that plaintiff had failed to adequately plead a cause of action for fraud, and so the alternative decision that the claim is also barred by Worker's Compensation is not as significant as it might be. *Id.* at 1031. Third, we are not bound by a decision of the Middle District of Pennsylvania.

We find that the apparent lack of any other case on this issue, in combination with the language of Pennsylvania's Worker's Compensation statute, make it evident that Pennsylvania's Worker's Compensation statute is limited to damages for physical injury. Pierce's claims for civil conspiracy and interference with contractual relations are not the types of claims that the Pennsylvania legislature apparently intended to pre-empt when it passed its Worker's Compensation law. Accordingly, we will look to see whether Pierce has adequately pleaded trespass claims against the MCOB Defendants.

### 1. Civil Conspiracy

First, Pierce brings a civil conspiracy claim against "the individuals named." Brief in Opp. at 1. Presumably, Defendants Algarin, Rogers, Luker, Kinloch, Dixon,

Schell, Darling, Weisberg and Portner are the "individuals named" although this is not made clear in either the Amended Complaint or the Brief in Opposition.[5] Amended Complaint ¶¶ 35–36, 39, 42–47, 52. According to the Amended Complaint, the:

> conspiracy existed and culminated in the overt act of January 1993 in removing Frances Peirce [sic] as Executive Director of the Opportunity Board of Montgomery County, Inc. for the sole purpose of oppression, harassment, intimidation, embarrassment, coercion, extortion of give up rights [sic], and otherwise inflict injury, and emotional distress upon plaintiff Frances Pierce, and to attempt to silence her, and deprive her from pursuing her right as an American citizen to freedom of speech and political association under the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania.

*Id.* at ¶ 49.

Pierce argues that this civil conspiracy claim may stand because she has adequately pleaded the elements of civil conspiracy under Pennsylvania law. Brief in Opp. at 6–7 (citing *Baker v. Rangos*, 229 Pa.Super. 333, 324 A.2d 498 (1974); *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466 (1979); *Denenberg v. American Family Corp.*, 566 F.Supp. 1242 (E.D.Pa.1983)).

■ In Pennsylvania, a civil conspiracy can be pleaded when " 'two or more persons combined or agreed with intent to do an unlawful act or to do a lawful act by unlawful means.' " *Denenberg*, 566 F.Supp. at 1253 (quoting *Thompson*, 488 Pa. at 211, 412 A.2d at 472). Here, Pierce has pleaded that nine individuals conspired with the intent of depriving her of certain rights and inflicting injury on her. MCOB Defendants do not challenge that Pierce has stated a cause of action for civil conspiracy, simply that it is pre-empted by Worker's Compensation. We find that Pierce's Amended Complaint adequately pleads the elements of civil conspira-

cy, and therefore, sufficiently states a cause of action for which relief can be granted.

### 2. Malicious Interference with Contractual Rights

Count Three also includes a claim for malicious interference with contractual relations against the individual defendants.[6] Pierce's Amended Complaint alleges that (1) there was a business relationship between her and the MCOB, (2) the individual defendants knew about the business relationship, (3) the individual defendants intended to disrupt the relationship, (4) the defendants used improper means of interference, and (5) she was injured by the interference. Amended Complaint ¶¶ 42–47, 50.

■ Pierce and Defendants agree on the elements necessary to state a claim for tortious interference with contractual relations. Defendants' Brief at 10; Brief in Opp. at 8–9; *Pino v. Prudential Ins. Co.*, 689 F.Supp. 1358, 1362 (E.D.Pa.1988) (citing *Adler, Barish, Daniels, Levin v. Epstein*, 482 Pa. 416, 393 A.2d 1175 (1978), *cert. denied*, 442 U.S. 907, 99 S.Ct. 2817, 61 L.Ed.2d 272 (1979)); Restatement (Second) of Torts § 766 (1979). The claim requires that "one intentionally and improperly interferes with the performance of a contract ... between another and a third person." *Id.* MCOB Defendants' motion to dismiss is based on the theory that Algarin, Rogers, Luker, Kinloch, Dixon, Schell and Portner were all directors of MCOB, and therefore not third persons for the purposes of interfering with Pierce's contract with MCOB. They cite no caselaw in support of this theory.

Pierce asserts that Portner had resigned from the Board in December, 1992, and so is a third person for the purposes of this claim. Brief in Opp. at 8. As to the other MCOB Defendants, Pierce apparently argues that they acted outside the scope of their offices in participating in a scheme to have her removed from her job, because she asserts that it is a question of fact whether their actions were "ultra vires, and therefore, not

---

5. Of course, given the holding *supra*, Pierce's claims against State Defendants Darling and Weisberg have been dismissed.

6. According to the Restatement (Second) of Torts, the adjectives "malicious," "tortious," and "improper" all describe the same tort. Restatement, Introductory Note at 4–7.

privileged." *Id.* She cites to 15 Pa.Cons. Stat.Ann. § 5713 to demonstrate the personal liability of directors of non-profit corporations. These allegations of material fact are, however, irrelevant to a Rule 12(b)(6) motion to dismiss. Moreover, whether MCOB Defendants would be personally liable begs the question of whether they are liable at all.

Several cases in Pennsylvania have held that when an agent or employee of a corporation allegedly improperly interferes with another employee's contract with the employer, no third person is involved. *Vuksta v. Bethlehem Steel Corp.,* 540 F.Supp. 1276, 1282 (E.D.Pa.1982), *cert. denied,* 707 F.2d 1405 (3d Cir.1983); *Wells v. Thomas,* 569 F.Supp. 426, 435 (E.D.Pa.1983). Those cases involved managerial employees; here, Directors of the company are involved, and the absence of a third person seems even more apparent.

These cases are in contrast to *Hughes v. Technology Licensing Consultants, Inc.,* 815 F.Supp. 847 (W.D.Pa.1992), where the plaintiff specifically pleaded that co-employee/defendants acted outside the scope of their authority when they dismissed plaintiff. In that situation, the Western District denied a motion to dismiss the claim on the basis that plaintiff had alleged actions by a third person. *Id.* at 855.

Here, despite what Pierce alleges in her Brief, her Amended Complaint does not plead that MCOB Defendants acted outside the scope of their employment or authority when they dismissed her from her position, and therefore, they were not third persons. Even making reasonable inferences from the allegations in the Amended Complaint does not help Pierce, because the Amended Complaint states the claim against each individual defendant by alleging an official vote to dismiss her and discusses each actor in the context of his or her title and position on the Board. Amended Complaint ¶¶ 42–47; *Schrob,* 948 F.2d at 1405; *Markowitz,* 906 F.2d at 103.

As far as Defendant Portner is concerned, Pierce specifically pleads that "[d]uring his absence from the Board he maintained effective control over the Opportunity Board." Amended Complaint ¶ 48. Moreover, for all but two months of the alleged interference, Portner was President of the Board. *Id.* Taking her facts as true, Portner was not a third person to the contract either. We find that Pierce has not alleged that third persons interfered with her contract with MCOB, and therefore, she has not stated a claim upon which relief can be granted.

## C. Federal Civil Rights Claims

### 1. 42 U.S.C. § 1983

Also in Count Three, Pierce alleges a violation of her civil rights under § 1983. Paragraph 52 alleges that:

> Defendants Darling and Weisberg under the color of the laws by which federal money is distributed through their state agency and under the color of their offices, in the manner set forth above, acted to deprive Frances Pierce of rights secured by the Constitution of the United States, contrary to 42 USC § 1983, [sic] and the other named defendants acted in concert with them and with full knowledge of the motivations and intentions of defendants Darling and Weisberg.

MCOB Defendants seek to dismiss this claim on the ground that Pierce does not allege that the MCOB Defendants acted under color of state law. This, they assert, is fatal to her cause of action. In response, Pierce alleges that private parties that conspire with state actors act under color of state law for the purpose of § 1983. She cites *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and *Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980) to support her argument. These cases clearly hold that a private person acts under color of state law when the private person is a " 'willful participant in joint activity with the State or its agents.' " *Adickes,* 398 U.S. at 152, 90 S.Ct. at 1606 (quoting *United States v. Price,* 383 U.S. 787, 794, 86 S.Ct. 1152, 1156–57, 16 L.Ed.2d 267 (1966)); *Dennis,* 449 U.S. at 27–28, 101 S.Ct. at 186.

Pierce's Amended Complaint asserts that the MCOB Defendants "acted in concert with [the State Defendants] and with full knowledge" of their intentions. Amended Complaint at ¶ 52. This is enough to state a

claim against the MCOB Defendants for § 1983 liability.

We now are faced with the question of what, exactly, the basis of Pierce's § 1983 claim is. At no point in her responsive brief does Pierce detail which of her rights were allegedly violated by any Defendants. All Defendants have theorized several possibilities, all of which, they assert, are meritless. At this point, we will not guess which possible claims Pierce intends to pursue. As was seen in the state law claims against MCOB Defendants, what Pierce theoretically pleaded in the Amended Complaint may be much more expansive than what she actually intended to claim. Although both State and MCOB Defendants identified several possible claims in their Motions to Dismiss, and laid out succinct arguments why those claims should be dismissed, Pierce did not respond in any way to those arguments. In the two pages of her brief devoted to her § 1983 claim, she simply reiterates that she has been deprived of her "rights".

Because Pierce has theoretically pleaded a violation of her rights, but because there is no telling what those rights are, we GRANT Pierce leave to AMEND her complaint to clarify exactly which of her rights were allegedly violated by the MCOB Defendants in regard to her § 1983 claim against them. We therefore DENY MCOB Defendants' Motion to Dismiss, but without Prejudice.

■ In addition, State Defendants seek to dismiss the § 1983 claim against them on the ground that it exceeds the applicable statute of limitations. State Defendants argue that it "is beyond dispute that a two-year statute of limitations applies to actions brought under 42 U.S.C. § 1983." State Brief at 12 (citing *Fitzgerald v. Larson*, 769 F.2d 160, 162 (3d Cir.1985)). They assert that original service of the Amended Complaint on them was on November 30, 1994, therefore, they are only liable for alleged § 1983 violations that occurred after November 30, 1992. The only date specified in the Amended Complaint after November that relates to them is December 16, 1992. Allegedly, on December 16, 1992:

Defendants Darling and Weisberg appeared at the offices of the Opportunity Board and stated they were there to discuss the closure and adverse action to be taken toward the Board. No reasons were stated. These defendants refused to answer questions, got up and left. The entire meeting took 15 minutes. The purpose of the attendance of defendants Darling and Weisberg was to give a basis for the actions which were planned sub rosa to remove Frances Pierce from her job as Executive Director.

Amended Complaint ¶ 41.

State Defendants argue that this paragraph does not describe a § 1983 violation, and therefore, there is no § 1983 claim against them. They argue that Pierce's claim against them is that they conspired, before December 16, 1992, with the MCOB Defendants to remove Pierce from her job. However, they argue that by December 16, 1992, the Department of Community Services had already resolved to terminate MCOB's funding based on the fact that MCOB's Board was improperly constituted under Federal requirements because it had not been democratically elected from the community. This reason for terminating MCOB's funding had nothing to do with Pierce or her political affiliation. Accordingly, State Defendants argue, any action they took at the December 16, 1994 meeting was unconnected with any alleged conspiracy to deprive Pierce of her civil rights. Therefore, they argue "plaintiff cannot, pursuant to Rule 11, specifically plead that anything movant said or did at the December 16, 1992 meeting was in furtherance of the alleged conspiracy." State Brief at 13. As a result, because only the December 16, 1992 meeting is allegedly within the statute of limitations, and because nothing unlawful was done there, they assert that Pierce has no timely claim against them for § 1983 violations.

Pierce's only response to this argument is found in the middle of her argument in general support of her § 1983 claim. She writes, "[t]he facts underlying the claim were here specifically pleaded, from the preconspiracy attempts by the state officials in 199–1991, [sic] to their actions within the statute of limitations in December 1992 resulting in Frances Pierce's wrongful dismissal, etc. in

January 1993." Brief in Opp. at 12. She cites no cases regarding the statute of limitations defense that State Defendants have raised.

Neither party briefed this issue for the Court, but from our own research, it appears that Pierce's claim against the State Defendants for conspiracy actions under § 1983 is time-barred. In several cases involving continuing discrimination, federal courts have held that an action is not time-barred if "subsequent *identifiable* acts of *discrimination* occur within the critical time period." *Held v. Gulf Oil Co.*, 684 F.2d 427, 430 (6th Cir.1982) (emphasis added) (Title VII). In *Bougher v. University of Pittsburgh*, 882 F.2d 74 (3d Cir.1989), plaintiff brought a § 1983 suit against her former professor for sexual harassment. She alleged that he had coerced a sexual relationship with her for years, however, that relationship ended more than two years before her complaint was served on defendant. The complaint did, however, allege that defendant had "glared at Plaintiff in a threatening manner" within the two-year statute of limitations. *Id.* at 78. Plaintiff alleged that these menacing looks were a continuation of the sexual harassment she had suffered earlier. The Third Circuit held that plaintiff failed to state a cause of action because the actions that occurred within the statute of limitations, even if unlawful, "did not amount to a deprivation of constitutional or federally protected rights within the contemplation of section 1983." *Id.* at 79. Accordingly, the Court affirmed the decision to dismiss the case.

In contrast, the Middle District of Pennsylvania did not dismiss a civil rights case where the plaintiff alleged that he was terminated from his job on account of his race. *Rogers v. Mount Union Borough*, 816 F.Supp. 308 (M.D.Pa.1993). The Court held that even though the acts leading up to the termination occurred before the statute of limitations, that the discharge was the core of the complaint, and he was discharged within the statute of limitations. *Id.* at 317.

Applying the holding of *Rogers* to this case, the "core" of the allegations against State Defendants is the conspiracy allegation. The conspiracy, with one exception, apparently took place outside the statute of limitations. The one exception is the meeting in December, 1992. At the time of the meeting, state authorities had decided to terminate MCOB's funding because the MCOB Board had not been democratically elected, as was required. According to the Amended Complaint, the State Defendants met with the MCOB Board to inform them of "adverse action" against MCOB, apparently, the termination of funding. Even if State Defendants had ulterior motives, simply notifying the Board of the decision to terminate funding was not an unlawful act, and does not rise to the level of a constitutional deprivation. *See Bougher*, 882 F.2d at 78. Because the only act of State Defendants within the statute of limitations appears to be a lawful act, it is not part of a continuing deprivation that would bring the previous, allegedly unlawful acts within the statute. *Held*, 684 F.2d at 430. Accordingly, the federal civil rights claims under § 1983 against the State Defendants are barred by the statute of limitations.[7]

### 2. 42 U.S.C. § 1985(3)

Finally, Count Three alleges a cause of action under § 1985 against all defendants. Paragraph 56 of The Amended Complaint asserts:

> The named defendants conspired for the purpose of depriving, either directly or indirectly, Frances Pierce of the equal protection of the laws, or of equal privileges and immunities under the laws, to injure Frances Pierce and her property on account of her support and advocacy of candidates of the Republican Party for voting for electors for President or Vice–President of the United States, or for members

---

**7.** Because of this holding, we need not examine State Defendants' assertion that they are protected by qualified immunity. We note, however, that because Pierce's Amended Complaint inadequately describes her § 1983 claim, we would be unable to determine whether State Defendants were protected by qualified immunity. Had we found that Pierce's § 1983 claim was not barred by the statute of limitations, we would have permitted State Defendants to move again for dismissal on the qualified immunity ground after Pierce clarified her Amended Complaint.

of the Congress of the United States, all contrary to 42 USC § 1985(3), [sic] and for the reasons as hereinbefore set out.

§ 1985(3) prohibits two or more persons from conspiring:

for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or ... to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy.

Both MCOB and State Defendants seek to dismiss this claim. They assert that in order to maintain a § 1985(3) claim, some class-based invidious discriminatory animus must be alleged. *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Wagner v. Township of Harmar,* 651 F.Supp. 1286, 1288 (W.D.Pa.), *aff'd,* 826 F.2d 1058 (3d Cir.1987). All Defendants argue that § 1985(3) only protects against discrimination based on "immutable characteristics," and that Pierce has not made such allegations. *Denchy v. Education and Training Consultants,* 803 F.Supp. 1055 (E.D.Pa.1992). According to Defendants, Pierce alleges that the discrimination against her was based on her political affiliation, and this, they argue, is not unlawful under § 1985(3). They cite *Rodriguez v. Nazario,* 719 F.Supp. 52 (D.P.R.1989) and *Deblasio v. Zoning Board,* 820 F.Supp. 876 (D.N.J.1993) to support this argument.

■ In *Griffin,* the Supreme Court specifically held that § 1985(3) was not "intended to apply to all tortious, conspiratorial interferences with the rights of others.... [T]here must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." 403

U.S. at 101–02, 91 S.Ct. at 1798. In the Third Circuit "it is clear that § 1985(3) protects only against discrimination based upon 'immutable characteristics,' such as race or gender, for which the members of a class have no responsibility." *Denchy,* 803 F.Supp. at 1062 (quoting *Carchman v. Korman Corp.,* 594 F.2d 354, 356 (3d Cir.), *cert. denied,* 444 U.S. 898, 100 S.Ct. 205, 62 L.Ed.2d 133 (1979)).

Courts in this Circuit have previously held that there is no § 1985(3) claim for discrimination based on political associations. *Rodriguez,* 719 F.Supp. at 56 (§ 1985(3) did not protect plaintiff who was fired solely on basis of political party membership); *Deblasio,* 820 F.Supp. at 885 (§ 1985(3) does not cover discrimination for being a "political outsider").

Here, Pierce specifically asserts in Paragraph 56 that she was discriminated against "on account of her support and advocacy of candidates of the Republican Party." [8] As the recent examples of former Democrats Richard Shelby of Alabama and Ben Nighthorse Campbell of Colorado demonstrate, political affiliation is not "immutable." *See* Keith Bradsher, et al., *The 1994 Elections: State by State,* N.Y. Times, Nov. 10, 1994, at B9 (Shelby switches from Democrat to Republican); Katharine Q. Seelye, *Democrats Lose Senate Seat with Switch by Coloradan,* N.Y. Times, March 4, 1995, at A8 (Campbell). Because Pierce does not assert discrimination based on an immutable characteristic, nor "force, intimidation, or threat," she has not stated a claim under § 1985(3) for which relief can be granted. Accordingly, MCOB and State Defendants' motions to dismiss this cause of action are GRANTED.

## D. Causes of Action Pierce Does NOT Assert

As all Defendants have pointed out, Count Three could be read to raise many more causes of action than Pierce alleges that it does. Defendants addressed many of the potential claims in their Motions to Dismiss.

---

**8.** Pierce also alleges in her Amended Complaint that she is African American. If she pleaded discrimination based on a race or gender ground she could survive the motion to dismiss. However, there is simply no indication or assertion in the Amended Complaint that any discrimination was based on her race or gender as opposed to political affiliation.

In her response, Pierce specifically limited the state claims in Count Three. We have granted Pierce leave to clarify her complaint as to the basis of the § 1983 cause of action. For the sake of avoiding disputes in the future, we now name the state causes of action that Defendants identified and argued in their Briefs, that Pierce either does not raise, or if raised, has waived. These causes of action are negligence, intentional infliction of emotional distress and defamation.

## IV. COUNT FOUR

 Jude Pierce asserts a claim for loss of consortium against all Defendants except MCOB, based on "the causes of action sounding in trespass, except for the federal civil rights violations alleged." Amended Complaint ¶ 58. MCOB Defendants seek to dismiss this claim, based on their argument that Pierce's trespass claims are all pre-empted by Pennsylvania's Worker's Compensation provisions. *Santiago v. Pennsylvania Nat'l Mutual Cas. Ins. Co.*, 418 Pa.Super. 178, 613 A.2d 1235 (1992).

Because we held *supra* that these claims are not pre-empted by Worker's Compensation, we hold that Jude Pierce's claim for loss of consortium is not either. Accordingly, MCOB Defendants' Motion to Dismiss Count Four is DENIED.

However, because all of the claims against the State Defendants have been dismissed, Count Four must likewise be dismissed against State Defendants. *Diaz v. Johnson Matthey, Inc.*, 869 F.Supp. 1155, 1158 (E.D.Pa.1994).

An appropriate Order follows.

### ORDER

AND NOW, this 31st day of March, 1995, upon consideration of Motion of Defendants Montgomery County Opportunity Board, Inc. (MCOB), Julio Algarin, Gregory A. Rogers, Wayne C. Luker, Allan Kinloch, Mattie Dixon, Aaron Schell and Harvey Portner (MCOB Defendants) to Dismiss Amended Complaint or in the Alternative, Motion for More Specific Complaint Pursuant to Fed. R.Civ.P. 12(e) (document number 20) and Motion of Commonwealth Defendants, Dennis Darling and Joel Weisberg, to Dismiss Amended Complaint (document number 23) and responses thereto, the Motions are hereby GRANTED in PART and DENIED in PART.

MCOB and MCOB Defendants' Motion to Dismiss Amended Complaint is hereby GRANTED as to Count III's claims of malicious interference with contractual rights and violation of 42 U.S.C. § 1985(3).

MCOB and MCOB Defendants' Motion to Dismiss Amended Complaint is hereby DENIED WITHOUT PREJUDICE as to Count I; Count III's claims of wrongful discharge, civil conspiracy, and violation of 42 U.S.C. § 1983; and Count IV.

MCOB and MCOB Defendants' Motion for More Specific Complaint is hereby GRANTED as to Count II and Count III's § 1983 claim, both to be Amended in accordance with the attached Memorandum.

Commonwealth Defendants' Motion to Dismiss Amended Complaint is hereby GRANTED in its entirety.